THE STEAMBOAT SULTANA, Plaintiff in Error,

*vs.*

SILAS CHAPMAN, Defendant in Error.

ERROR TO MILWAUKEE CIRCUIT COURT.

The statute providing for a proceeding *in rem* against "boats and vessels used in navigating the waters of this state," applies as well to boats and vessels passing to and from the ports of other states, through and across the waters of this state, as to boats and vessels used in navigating the waters of this state exclusively.

Goods consigned to "D. & Co., warehousemen at Milwaukee," were shipped on board a boat at Buffalo, and landed at a pier extending into the lake at Milwaukee— not being the warehouse or place of business of the consignees, and there destroyed by fire. Held, that in the absence of proof of an established usage of trade to deliver goods in that manner, it was not a delivery to the consignees according to the undertaking of the carrier.

A particular custom or usage of trade is a question of fact for the jury. They having passed upon this question, under instructions of the court below, and found against the usage, this court will presume the fact in favor of such finding.

*Quere.* Can the common law liability of a common carrier be limited, by an exception against loss by fire, inserted in the bill of lading?

THE plaintiff below filed his complaint under the provisions of chapter 116, Revised Statutes of Wisconsin, commonly known as the "boat and vessel act," setting forth among other things, that on or about the 10th of October, 1853, the plaintiff shipped on the steamboat Sultana, then in Buffalo, in the state of New York, certain goods therein described; that the steamboat was then and there used and occupied in the business of common carriers to and from the city of Buffalo, and to and from the city of Milwaukee; and that the master, in consideration of payments, &c., undertook and promised to deliver the goods to the complainant at the city of Milwaukee; and that the same were, by the negligence and wrongful act of the sailors, lost, &c.

To this declaration the captain and owner of the boat filed a plea of not guilty, and attached thereto a notice that the goods were delivered at the pier of Higby, in the city of Milwaukee, according to the usage and custom of the port, and that after de-

livery at said pier they were burned, without default on the part of defendant, &c.

The cause came on to be heard at the May term, A. D. 1853, before a jury, when the complainant offered certain depositions in evidence, to which the defendant objected, as well as to all testimony under the complaint, for the following reasons, to wit:

1st. Because the contract was made out of the state of Wisconsin.

2d. Because said contract was governed by the maritime laws.

3d. Because the statute of Wisconsin, in its terms, does not apply to any vessels running or navigating from state to state.

4th. Because said complaint does not show a case over which the court has jurisdiction; the proper remedy for the party being either by another form of action, or in admiralty.

These objections the court below overruled, and the defendant excepted.

It appeared from the testimony then given to the jury, that the plaintiff below was a merchant doing business in the city of Milwaukee, and that he purchased the goods in controversy, in the city of New York, in the fall of 1853, which were shipped, in boxes, numbered and marked Silas Chapman, care of Dousman & Co., consignees, on the Merchants' Steam Transportation Co.'s canal boat "Cromwell," at New York; that the goods, in the course of their transit, were shipped upon the steamboat Sultana, and were by said boat delivered at and upon the pier known as Higby's pier at Milwaukee, during the night; that the boat left the pier about daylight the following morning, and that the pier and goods were burned about an hour afterwards. The bill of lading of said goods, signed by the consignors, was also produced, by which the goods, eleven boxes, were to be delivered to Dousman & Co., consignees, upon payment of charges, &c., and containing an exception of dangers of navigation, fire and collision.

It also appeared that the Sultana's regular place of landing goods for Milwaukee was at Higby's pier; but that Dousman & Co. had a pier and warehouse also at said city; that goods so landed at Higby's pier consigned to Dousman & Co., were by the

latter, removed to their own warehouse at their own expense, and free of any charge by the owner of the pier, who in like manner received goods consigned to him and landed at Dousman & Co.'s pier, free of pier charges.

When the plaintiff had rested his case, the defendant moved for a nonsuit on the following grounds:

1st. Because the plaintiff alleges a contract made from Buffalo to Milwaukee, and the proof is of a contract with different parties from New York to Milwaukee.

2d. The goods were to be delivered here upon payment of charges, and no proof was given of payment, or of an offer to pay charges.

3d. The proof is that a delivery at Higby's pier was a delivery to Dousman & Co., and there was such delivery.

4th. There was no demand of the goods by Dousman & Co. or other person.

Which motion was overruled, and the defendant excepted.

The defendant then introduced the testimony of several witnesses to show a custom at Milwaukee to the effect following: That the steamboats navigating the lakes in like cases to that of the Sultana in this case, unloaded all goods, to whomsoever consigned, for Milwaukee, at the piers extending into the lake, each boat having her agent and pier to run to; and each forwarder or consignee, in the business of receiving goods, either kept a person at the pier to receive and check off the goods, or they were received by the person attending at the pier, and afterwards applied for and received by the consignee.

Thereupon the defendant moved the court to instruct the jury as follows, to wit:

1st. That the court has no jurisdiction, by virtue of the statute, over the contract set forth in a vessel navigating from New York to Illinois and intervening ports in this form of complaint.

2d. That the exception in the bill of lading, of loss by fire, is a good exception, and not void as against the policy of the law.

3d. That under the bill of lading, tender of freight and demand of goods were necessary to enable the plaintiffs to recover their value from the boat.

4th. That the usage and custom of business at the port of Milwaukee, control and explain what constitutes delivery, and a delivery in pursuance of such usage and custom exempts the boat from liability for subsequent loss.

5th. That if either by general usage and custom among forwarders, or by arrangement to which Dousman and Higby were parties, consignees of goods were to receive such goods on the pier at which boats usually stop, and the care and charge bestowed on the goods by the owner of the pier, is by such custom or arrangement, for the benefit of the consignee, then the delivery of the goods in question at the pier of Higby was a delivery to Dousman & Co., and the boat was discharged from liability for subsequent loss.

6th. If the jury find that Higby was the agent, as well of the owners or consignees of the goods, as of the boat, being the agent of the owners and consignees to receive the goods, and of the boat merely for the purpose of collecting dues, then the delivery to Higby is a delivery which exonerates the defendant; for the purpose of determining the agency, the jury may look at evidence as to who paid Higby, as one circumstance of weight in the absence of conflicting testimony.

On the first, second and third instructions asked, the court charged the jury in the negative; and in the affirmative on the fourth, with the qualification and proviso, that such usage and custom be generally known and universally assented to by all persons concerned therein.

To which rulings the defendant excepted. The court ruled the fifth and sixth in favor of the defendant.

The plaintiff below, also, moved the following instructions to the jury, to wit:

1. If the goods in question were delivered to the defendant as a common carrier, consigned to the care of Dousman & Co., Milwaukee, the defendant was bound to deliver them to the consignees; and until so delivered would be liable for all losses, except such as accrue by the act of God, or the public enemies.

2. If the consignees, Dousman & Co., had a known place of business, easily accessible to the defendant, in Milwaukee, the

defendant was bound to deliver the goods to the consignees there, in the absence of established usage of trade to the contrary.

3. In order that a custom or usage of trade shall excuse a common carier from delivering goods to the consignee, it must have been so long established, and so uniformly practiced upon, as to warrant the jury in believing that it was well known to the parties, and that the contract was made in reference to it.

4. That in order for the defendant in this case to be exempted on the ground of custom, it must show not only a custom to land all its goods at Higby's pier, but to land them there at the risk of the consignees as soon as so landed.

5. That if the jury find that Higby was the agent of the boat; that the boat landed goods consigned to the pier owners at his pier solely for the convenience of the boat, although such other consignees had been in the habit of going there to get their goods without notice; yet that until they actually applied for and obtained possession of the goods, there was no delivery as to them; but that until such delivery, the common law liability of the carrier still continued.

6. That a loss of goods by fire before they were delivered to the consignees, does not excuse the defendant, even though loss by fire is excepted in the bill of lading.

7. That it is for the jury to determine, from all the evidence, whether the goods in question were ever delivered to the consignees.

Upon the first, third, fourth, sixth and seventh points, the court charged the jury in the affirmative; and on the second, with the following addition: " an understanding or agreement of the consignees that they might be delivered elsewhere." On the fifth, the charge was in the negative. The defendant excepted to the rulings on the first, second, third, fourth, sixth, and seventh points.

The jury found for the plaintiff, and the defendant moved for a new trial, on the ground that the verdict was against the evidence and the instructions of the court. The motion was overruled, and the defendant excepted.

*Brown & Ogden*, for plaintiff in error.

1. The court below erroneously overruled the objection made to the jurisdiction of the court under the act in question, and to the admission of testimony.

The admiralty jurisdiction established by the constitution extends over the lakes. *The Genesee vs. Fitzhugh*, 12 *How. U. S. R.* 443.

We claim for every vessel sailing from Wisconsin to Buffalo, the right to navigate the waters of the lower lakes, free from every burden, impediment or restraint not imposed by the general admiralty rules, or the laws of Congress. And the assertion of this claim becomes doubly important to us at a time like the present, when nullification, both at the north and south, is destroying the friendly relations of the members of the Union, and threatening to convert them into a number of hostile states, as petty in the spirit of their legislation and judicial decisions as they would be contemptible in point of power.

But the act itself, in its own terms, admits of no such construction; it says, not boats or vessels in the waters of this state, or navigating the waters, but "boats or vessels *used* in navigating the waters of this state." That language confines its effect to domestic vessels, chiefly used on our own waters, and does not extend to a vessel *used* in going from Buffalo, and passing through our waters only in carrying out that use. The decisions treat such a lien as applicable only to domestic vessels. *Tree vs. The Indiana, Crabbe*, 479.

2. The bill of lading contained an exception of liability on account of fire; which exception the court decided to be void.

The common law compelled carriers to receive goods, and affixed certain liabilities to that character; and in several cases it has been held that a mere general notice will not relieve the carrier from that responsibility; but the case in 2 *Hill*, 622, is the only one which holds that this liability cannot be waived by express agreement. There is a class of duties from which carriers ought not to be relieved; as, for instance, the duty to use ordinary care and diligence. It is upon this, that, in fact the case in 19 *Wend.* 251, turns, although cited in 2 *Hill*, to sus-

tain that decision. The carriers, however, are supposed to receive an additional price for their additional risk, and if, in the present instance, the contracting parties agree that the owners shall assume the risk of fire, and save the additional price which should be paid for such risk, we are unable to discover any principle of public policy with which such agreement conflicts. The validity of arrangements limiting the liability of carriers has been fully established, both in England and in the United States. 4 *Bing.* 218; 5 *id.* 217; *Carr vs. W. Lan. and Y. R. R. Co.*, 14 *Eng. C. L. & Eq.* 340; *Chippendale vs. Lan. R. R. Co.*, 7 *id.* 340; 5 *Rawle*, 189; *Page vs. Portsmouth S. B. and E. R. R. Co.*, 31 *Maine* (1 *Red.*). 228; *Stone vs. Waite, id.* 409; 9 *Watts*, 87; *Camden and Amboy R. R. Co. vs. Baldauf*, 16 *Penn. State R.* 67. And in addition, the case in 2 *Hill*, being the only authority upon which the court below relied, has been overruled in New York itself, and declared not to be law. *Parsons vs. Monteath et al.*, 13 *Barb. S. C. R.* 353; *Dorr vs. N. J. Steam Nav. Co.*, 4 *Sandf. S. C. R.* 136; *S. C.*, 1 *Kernan*, 485; 6 *Howard*, 344.

3. The bill of lading required payment of freight as a condition precedent to the delivery of the goods. Freight should have been tendered and demand made before suit. *Story's Abbott on Ship.* 288, *and note* 1; *Id.* 300 *and note* 1; 6 *East*, 622.

4. The qualification made by the court below to the fourth instruction asked by the defendant, was erroneous. *Van Stanwood et al. vs. St. John et al.*, 6 *Hill*, 157; *Gibson vs. Culver & Brown*, 17 *Wend.* 305.

5. The court erred in overruling the question of the defendant as to the custom of the port of Milwaukee. *See cases above cited*, also 4 *Pick.* 371; 6 *Watts & Serg.* 62.

6. The court erred in refusing a new trial. There is no inconsistency in a person being agent for two parties. *U. S. Insurance Co. vs. Scott*, 1 *J. R.* 111, 115; *Williams vs. Nichols*, 13 *Wend.* 58.

*James H. Paine & Sons*, for the defendant in error.

1. The questions whether there was any custom or agreement,

such as was contended for by the plaintiff in error, and if so, whether there was a delivery of the goods in question, according to such custom or agreement, were questions of fact for the jury to determine, under the instructions of the court, and this court will not review their decision.

2. The boundary of this state is a line running along the middle of Lake Michigan. The waters, therefore, in the western part of Lake Michigan, are "the waters of this state." A boat sailing through those waters, in the prosecution of its regular business, is "a boat used in navigating the waters of this state." The attempt to apply this statute only to boats used *exclusively* in navigating the waters of this state, is entirely without foundation, either in the letter or in the reason and intent of the statute. · *Vide Russell vs. Elk,* 6 *Missouri R.* 552.

3. The only other question is, whether the court below erred in instructing the jury that the exception in the bill of lading against loss by fire, did not excuse the carrier, even though the goods were lost by fire. The instruction was correct. *Hollister vs. Nowlen,* 19 *Wend.* 234; *Cole vs. Goodwin & Story,* 19 *id.* 251; *Gould vs. Hill,* 2 *Hill,* 263; *Jones vs. Voorhees,* 10 *Ohio,* 143.

The history of this question in the English courts, as shown by Justices Cowen and Bronson, is full of instruction and warning. For, after allowing carriers gradually to encroach upon the provisions of the common law, by notices and special acceptances, they at last eluded all responsibility, and Parliament was compelled to interfere and restore, substantially, the wise and safe rule which the courts, by continued relaxation, had overthrown.

And it was doubtless owing to the English decisions on this subject, that the American courts, while almost invariably taking such ground in the case before them, as held the carrier liable, notwithstanding any notices to the contrary, have yet in many instances used language that seemed to assume that their liability might be avoided if proper steps were taken. Yet it is asserted by a learned law writer, that there has been no case in the United States which has expressly decided that a common carrier may limit his common law liability by a general notice, or

by special acceptance.' *See Smith's Leading Cases, Vol. I, 275*; *also generally same Vol. from p. 268 to 281.*

There is no distinction between the liabilities of carriers by land and those of carriers by water. 2 *Kent's Com.* 769; *McArthur vs. Sears,* 21 *Wend.* 193; *Flanders on Shipping,* 288.

The whole question, though very important, is yet very simple. It is, whether the public safety demands the common law rule as to the liability of common carriers; and if so, whether they ought to be allowed at pleasure to evade or destroy it. And on this point it is believed the reasoning in *Cole vs. Goodwin & Story,* stands unanswered by anything in the subsequent cases.

The proof also shows that the bill of lading was never executed; not being signed by the master, or any body on the part of the boat. There was then no special contract made, and the liability was left as at common law. For, although the bill of lading may have been signed by Hall, Palmer & Co., the consignors, yet not being signed by the master, as it is evident, on the face of the bill, it was intended to be, in order to be executed, there was no mutuality, and therefore contract, other than that which arose from the employment of the boat as a common carrier by the plaintiff below, leaving its liability unrestricted by the bill of lading.

As to mutuality being necessary to a contract, *see Chitty on Cont.* 14, 15, 16; *Wood vs. Edwards* (19 *J. R.* 205), *and cases cited by counsel.*

As to masters signing bills of lading, *see Flanders on Shipping,* 450, 451, 452, 453, 454 *and* 455.

*By the Court,* COLE, J. This is a complaint filed under the provisions of chapter 116, R. S., for damages accruing from the non-performance or mal-performance of a contract of affreightment. The question of jurisdiction which was raised in the case, is the one which naturally first presents itself for our consideration.

It was objected in the court below, by the plaintiff in error, that this statute was intended only to apply to domestic vessels, or those chiefly used upon the waters of this state, and did not extend to boats which, like the Sultana, were used in navigating the lakes from Buffalo to Chicago, stopping merely at the ports of this state, to receive and discharge freight and passengers.

Upon examining the statute, its obvious object and purpose appear to be to provide a remedy, by a proceeding *in rem*, for the collection of demands arising upon various grounds mentioned in the statute; and it seems to contemplate proceedings for that purpose against "every boat or vessel used in navigating the waters of this state." The eastern boundary of the state is a line running along the middle of Lake Michigan, and a vessel used in navigating the lake within this line, comes within the plain meaning and language of the act. The statute does not make any distinction, in its terms, between a vessel solely and exclusively used upon the waters of this state, and those passing beyond its boundaries; nor can we see why any such distinction should exist. We venture to say, that there are very few vessels used in navigating the waters of this state that belong to the former class. And if the provisions of the statute do not apply to boats which, like the Sultana, are used in navigating waters beyond, as well as waters within the boundary of this state, they are of but little avail. If this construction is given to the act, there is scarcely a boat on Lake Michigan, and not one upon the Mississippi and Wisconsin rivers, to which the proceeding given by it would apply. It is suggested upon the brief of the counsel for the plaintiff in error, that to hold that the provisions of this statute extend and apply to boats not exclusively used upon the waters of this state, may be attended with consequences most detrimental to the interests of commerce, and hazardous to the peace and harmony of the states of the Union.

We deem these apprehensions entirely groundless. At all events, unless the remedy by a proceeding *in rem* is to be abolished, we are unable to understand how commerce is to be more carefully protected, or the peace and harmony of the country

more fully secured, by giving the United States District Courts exclusive jurisdiction of these causes. Will not all the objections taken to the state courts entertaining jurisdiction of this proceeding, when directed against a vessel used in navigating the waters of this and other states, apply with equal force to the admiralty jurisdiction of the federal courts? It seems to us that they do. But we have no doubt of the jurisdiction of the Circuit Court, under this statute, of the case, and we therefore, without further comment, proceed to notice other questions raised in the cause.

The cause of action set forth in the complaint was, the non-performance or mal-performance of a contract made with the master of the Sultana, to transport and deliver certain goods at Milwaukee, shipped at Buffalo. The boxes containing the goods were marked in the name of the defendant in error, and consigned to the care of Dousman & Co., forwarders and warehousemen at Milwaukee. The goods in controversy were landed by the boat in the night at Higby's pier, a place at some distance from the place of business of Dousman & Co.; and by Higby's men placed in the warehouse there, where they were burned, with the warehouse and pier, before morning. The bill of lading contained an exception from all losses occasioned by navigation, fire and collision. It seems to have been the practice of the Sultana to land her goods for Milwaukee, at Higby's pier, where they were generally received by the persons to whom they were consigned.

One ground relied upon by the plaintiff in error to defeat a recovery, was the exception in the bill of lading, exempting the carrier from loss occasioned by fire; and the court was asked to instruct the jury that this exception was not void as against the policy of the law; which instruction the court refused to give, and this refusal is assigned for error here. And the cause has been argued in this court as though our decision must necessarily involve the determination of the question, as to whether a common carrier can restrict his common law liabilities by such an exception in a bill of lading, or by a special contract with the owner of the goods. On the one hand, it is contended that it is

against public policy to permit a common carrier thus to restrict his liability, even by a special agreement with the employee, and that the courts will not and ought not to sustain such contracts; and in support of this doctrine, relying upon the arguments and reasons given in the case of *Hollister vs. Nowlen* (19 *Wend.* 234); *Cole vs. Goodwin* (*id.* 251), and the subsequent case in 2 *Hill*, 623; while upon the other side, it is insisted that no solid reason can be assigned why a party contracting with a common carrier should not, if he so pleases, make a special agreement, assuming the risk of fire himself, and thus save the additional price which he would have to pay for the insurance of the goods against such a loss; that such agreements, when fairly made, are perfectly valid, and should be enforced; citing for authority, upon this point, a number of English cases decided within the first thirty years of the present century, and also the following cases: *N. J. Steamboat Navigation Co. vs. Merchants' Bank*, 6 *How. R.* 344; *Parsons vs. Monteith et al.*, 13 *Bar. S. C. Rep.* 353; *Dorr vs. N. J. Steam Navigation Co.*, 4 *Sand.* 136; *S. C.*, 1 *Kernan*, 485.

From the view which we have taken of this case, we do not feel called upon to decide, whether a special agreement to exempt a common carrier from the liabilities of his employment, was made in this case, and whether, if made, it is an agreement that should be enforced; but conceding that the carrier might, and did limit his responsibility in this case by the exception in the bill of lading, we are still of the opinion that this judgment must be affirmed.

It will be remembered that these goods were consigned to Dousman & Co., who had a warehouse and place of business perfectly accessible to the boat. It was the duty of the carrier to deliver these goods at Dousman & Co.'s pier, the proper place of destination, to the consignees. That was their contract, in the absence of all custom or established usage of trade to deliver them elsewhere. But for the convenience of the boat, the goods were delivered at Higby's pier, not at Dousman & Co.'s, and were there destroyed. The plaintiff in error insisted upon the trial, that under the proof, a delivery at Higby's pier was a

delivery to Dousman & Co., and the court left the question fairly to the jury to determine whether there was any general usage or custom among the forwarders at Milwaukee, or any arrangement to which Dousman & Co. and Higby were parties, by which consignees of goods were to receive such goods on the pier at which the boats usually stopped; and to say whether by such custom or usage, a delivery at Higby's pier was a delivery to Dousman & Co.; and if the jury should find these questions in the affirmative, that then the boat was discharged from liability for the subsequent loss. And the jury were likewise instructed to find whether Higby was the agent as well of the owners or consignees of the goods as of the boat, being the agent of the owners and consignees to receive the goods, and of the boat merely for the purpose of collecting dues; and if so, that then the delivery to Higby was a delivery which would exonerate the boat from further liability. All these questions were found by the jury in the negative, and this finding must be considered as conclusive. There was not then a delivery of the goods at the proper place to a person authorized to receive them, but they were deposited at a place where the boat had no right to leave them, and were there destroyed. Under such circumstances, notwithstanding the exception in the bill of lading, which, for the purposes of this case, may be considered a valid exception, and still it does not exempt the carrier from liability for this loss. He had no right to place these goods where he did; and having done so, and a loss having ensued, he must be held responsible for it, as being occasioned by his own negligence or misconduct.

It is believed that these remarks have sufficiently disposed of all the questions which we deem material in the case.

The judgment of the Circuit Court is therefore affirmed, with