RUFUS R. GRAVES AND OTHERS *vs.* THE HARTFORD AND NEW YORK STEAMBOAT COMPANY.

It is a clear duty belonging to common carriers of merchandise under their contract, to deliver his goods to the consignee if he presents himself at the proper place and in proper time to receive them, and, in such case, there is no room, nor any occasion, for the interposition of a warehouseman, although the carriers make known and regular transits, and have a warehouse and platforms for the delivery of goods at the end of the transit; and the carrier is not discharged from liability as a carrier, by placing such goods either on the platform or in the warehouse for delivery. And the consignee is entitled to a fair and reasonable time and opportunity to receive his goods, and until he has had such time and opportunity, the goods remain in the care of the carrier as such.

ACTION ON THE CASE against the defendants as common carriers, for the loss of twelve bales of cotton; tried in the Superior Court (*Pardee, J.*) to the jury, who returned a verdict for the defendants. The plaintiffs moved for a new trial for errors in the charge. The case is fully stated in the opinion.

*H. C. Robinson*, and *F. J. Mather* of New York, in support of the motion, cited *Crouch* v. *Great Western Railway Co.*, 2 Hurlst. & Norm., 491, 500; *Ostrander* v. *Brown*, 15 Johns., 39; *Fisk* v. *Newton*, 1 Denio, 45, 47; *Gibson* v. *Culver*, 17 Wend., 305; *McDonald* v. *Western R. R. Corporation*, 34 N. Y., 497; *Fenner* v. *Buffalo & State Line R. R. Co.*, 46 Barb., 103; *Barclay* v. *Clyde*, 2 E. D. Smith, 95; *Miller* v. *Steam Navigation Co.*, 10 N. Y., 431, 436; *Goold* v. *Chapin*, 20 id., 259; *Ely* v. *N. H. Steamboat Co.*, 53 Barb., 207, 215; *Northrop* v. *Syracuse R. R. Co.*, 5 Abbott's Pr. R., 425; *Eagle* v. *White*, 6 Whart., 505; *Hemphill* v. *Chenie*, 6 Watts & Serg., 62, 66; *Clarke* v. *Needles*, 25 Penn. St. R., 338; *Farmers' & Mechanics' Bank* v. *Champlain Transportation Co.*, 23 Verm., 186; *Winslow* v. *Verm. & Mass. R. R. Co.*, 42 Verm., 700, 705; *Moses* v. *Boston & Maine R. R. Co.*, 32 N. H., 523; *Michigan Central R. R. Co.* v. *Ward*, 2 Mich., 538; *Rome R. R. Co.* v. *Sullivan*, 14 Ga., 277; *Wood* v. *Crocker*, 18 Wis., 345; *Adams Express Co.* v. *Darnell*, 31 Ind., 20,

23 ; *Ala. & Tenn. Rivers R. R. Co.* v. *Kidd*, 35 Ala., 209 ; *Sleade* v. *Payne*, 14 La. Ann., 453 ; *Morris & Essex R. R. Co.* v. *Ayres*, 29 N. J., 393 ; *Merwin* v. *Butler*, 17 Conn., 139 ; *Converse* v. *Norwich & New York Transportation Co.*, 33 id., 166 ; *Salmon Falls Manufacturing Co.* v. *Bark Tangier*, 21 Monthly Law Rep. (N. S.), 6, (May, 1858) ; *Certain Logs of Mahogany*, 2 Sumner, 589 ; *Owners of the Mary Washington*, v. *Ayres*, 5 Am. Law Reg. (N. S.), 692, (Sept., 1866) ; *The Eddy*, 5 Wall. 481, 495 ; 2 Kent. Com., 604 ; Story on Bailm., sec. 448 ; 1 Parsons on Cont., 671 ; 2 Redfield on Railways, § 157 ; *Merritt* v. *Old Colony Railway Co.*, 11 Allen, 80 ; *Norway Plains Co.* v. *Boston & Maine R. R. Co.*, 1 Gray, 263 ; *Stevens* v. *Boston & Maine R. R. Co.*, id., 277 ; *Hamilton* v. *Nickerson*, 11 Allen, 308 ; *Sessions* v. *Western R. R. Corporation*, 16 Gray, 132 ; *Hickox* v. *Naugatuck R. R. Co.*, 31 Conn., 283 ; *Merriam* v. *H. & N. H. R. R. Co.*, 20 id., 360.

*R. D. Hubbard*, contra.

It is quite evident, in view of modern decisions, that the defendants bore to their freighters a double relation :—First, of common carriers for the transportation of goods ; next, of warehousemen for the storage of the same ; the two relations being in no case concurrent, but the latter beginning just where the former ended.

When and where then, does the carriage, properly speaking, end ? Or, in other words, at what point between the reception of goods by the carrier, and their actual delivery at the end of the transit, does the obligation of carrier cease, and that of warehouseman begin ?

By the law as it formerly stood, and as it now stands as applicable to all carriers by water not having warehouses of their own for the storage of goods, and not making regular transits, the carrier was discharged on unlading his goods on the wharf and giving notice to the consignee ; or, if not called for, and particularly if the carrier wished to preserve his freight lien, he might place them in the custody of the wharfinger, who is only a warehouseman under another name.

Story on Bailm., § 448; 3 Kent Com., 215; Flanders on Shipping, §§ 273, 275, 278; *Chickering* v. *Fowler*, 4 Pick., 371; *Gracie* v. *Maine Ins. Co.*, 8 Cranch, 83.

From this principle it would naturally result, that where the wharf of the carrier is made a gratuitous warehouse, and the carriage is in point of fact performed, and where the goods, not being called for when unladen, are placed in the warehouse, or, what is the same thing, on the platform attached thereto, for convenience of delivery to the freight owner, the carrier should thenceforth stand accountable only as warehouseman. Accordingly this rule has been adopted in the best considered modern cases in this country. *Norway Plains Co.* v. *Boston & Maine R. R. Co.*, 1 Gray, 263; *Sessions* v. *Western R. R. Corporation*, 16 id., 132; *Jackson* v. *Sacramento Valley R. R. Co.*, 23 Cal., 268; *Illinois Central R. R. Co.* v. *Alexander*, 20 Ill., 23; *Porter* v. *Chicago & Rock Island R. R. Co.*, 20 Ill., 407, 410; *New Albany & Salem R. R. Co.* v. *Campbell*, 12 Ind., 55; *Neal* v. *Wilmington & Weldon R. R. Co.*, 8 Jones' Law, 482; *Francis* v. *Dubuque & Sioux City R. R. Co.*, 25 Iowa, 60.

The rule of the charge requested by the plaintiff is against law, impracticable and incongruous. It is against law. It assumes the necessity of notice to the consignee, which, in the case of a carrier making regular transits, must be admitted by all modern rules of law to be unnecessary. It is impracticable. It makes the continuance of the carrier's liability as carrier, and the commencement of his liability as warehouseman, depend on a question of " reasonable time" to examine and remove the goods—a condition inexact and utterly undefinable, and which places a rule of law at the mercy of the rhetoric of counsel, and the caprice of a jury. The rule is incongruous in many respects. The liability of an insurer of goods in carriage terminates with the landing of the goods. *Mansur* v. *New England Mut. Marine Ins. Co.*, 12 Gray, 521; 1 Phillips on Ins., ch. 11, sec. 2, § 972. It would seem reasonable that the liability of the carrier should have a like termination with the liability of the insurer.

Graves *v.* H. & N. Y. Steamboat Co.

An act of Congress has exempted marine carriers from liability for injuries by fire on shipboard not caused by neglect of the carriers. 1 Brightly's Dig., 834, § 49. It would seem passing strange that, in case of accidental fire destroying both cargo and bottom when the ship was half unladen, the carrier should be held liable for that half of the cargo discharged and destroyed on the wharf, and not liable for the half destroyed on shipboard.

SEYMOUR, J. This is an action against the defendants as common carriers of merchandise by steamboat between Hartford and New York, for the loss of twelve bales of cotton. The case was tried to the jury who returned a verdict for the defendants, and the plaintiffs ask for a new trial on the ground that the jury were misdirected. The facts as detailed in the motion are in substance as follows:

On the 19th of September, 1867, the plaintiffs delivered to the defendants in New York twelve bales of cotton to be conveyed to their agent in Hartford. The defendants gave an informal bill of lading or receipt as follows.

"NEW YORK, Sept. 19th, 1867.·
Rec'd from R. R. Graves & Co., in good order, Hartford Boat, for W. F. Willard, agent, Hartford, Conn., marked W. F. W., Hartford, 12 bales cotton.
        Signed by    ——  ———
            For the Hartford & N. Y. Steamboat Co."

Willard had notice of the shipment by invoice sent by mail, and also, on the 20th of September, between 8.30 and 9 o'clock A. M., he was notified by defendants' servant that the consignment was on the boat at the wharf in Hartford. Willard forthwith directed his carman to go for the cotton, and he, with assistants to help load, called for it at about 11.30 to 11.45 o'clock. The defendants refused to deliver it, saying "it is not off the boat; there is so much other freight and it is so far back we have not got at it." The carman then went with his men to dinner, and between 12.30 and 1 o'clock again started for the cotton. The defendants' warehouse and freight upon the dock were then in flames.

The defendants had a commodious warehouse, with suitable and convenient open and covered platforms, situated upon their wharf, for the reception, delivery and storage of freight transported by them, and freight owners were accustomed to receive their freight from the platforms, the company leaving their freight on the platforms during the day, for convenience of delivery, and at night removing it into their warehouse, where it was stored without charge till called for. The plaintiffs' consignee had been accustomed to receive goods from the warehouse and platform. The cotton was discharged from the steamer between 11 and 12 o'clock, and placed on the platform in front of defendants' warehouse, at a place where, in the usual course of business, that kind of freight was usually deposited for delivery, at which place it remained in waiting until about 1 o'clock, when the warehouse took fire without fault of the defendants, and the cotton was mostly consumed.

The judge was requested by the plaintiffs' counsel to charge the jury that " the defendants' responsibility as carriers continued until the goods had been landed at the usual wharf, and notice given to the consignee, and the goods had been kept safely a sufficient time to give the consignee reasonable access to them to examine them, and reasonable time to remove them."

The judge refused such instruction, and charged them as follows: " There is but one question in this case for you to determine. It is this. Was the cotton deposited by the defendants upon their wharf in Hartford? A common carrier making known and regular transits, and having a warehouse and platforms for the delivery of goods at the end of the transit, is discharged from liability as a carrier on placing the goods either on such platform, or in such warehouse, for delivery to the owner or consignee, and thenceforth is only a warehouseman. If the jury shall find that in this case the defendants had provided a proper platform and warehouse at the end of their route for the delivery of freight, and in the usual course of business were accustomed to deliver goods on such platform, storing them in their warehouse only in case they were not called for during

the day, or within a reasonable time, then the defendants would not be liable as common carriers for any goods safely discharged from their boat and deposited on said platform for delivery to the consignee."

The decisions of courts upon the questions involved in this case are conflicting, and we shall not attempt to marshal them and decide upon their weight. The authorities are so divided that we feel at liberty to decide the case upon our views of its merits, and of the principles which ought to govern it.

The receipt given by the defendants does not attempt to specially define their duties. It simply acknowledges that the goods are received by the boat for W. F. Willard, agent, Hartford. It is of course to be construed in reference to the defendants' mode of transportation, which being by water, their duty, so far as the carriage of the goods is concerned, is limited by that mode of conveyance. They are not required, as carriers by wagon under a like receipt would be, to seek the consignee on the land and make delivery at his place of business. The usual course of business of carriers by water, in general, and of the defendants in particular, may properly be referred to in giving a construction to the writing. The defendants made regular trips, and had their platforms and warehouses upon a wharf of their own in Hartford, where they were accustomed to deliver, and where consignees were accustomed to receive, their goods.. Upon these facts the defendants claimed, and the plaintiffs conceded, that the wharf and platforms were the *proper places* of delivery. But the plaintiffs claimed, upon the fair and reasonable construction of the receipt, in connection with the admitted facts, that, if the consignee presents himself to receive his goods at the proper place and in proper time, the defendants are bound as common carriers to deliver the goods to him, and that, in such a case, the delivery to the consignee is a clear duty belonging to the defendants as common carriers under their contract. We think the plaintiffs are right in this proposition, and that if the consignee is on hand in proper time and at

the proper place, there is no room, nor any occasion, for the interposition of a warehouseman.

We are not certain that the judge's charge to the jury was intended to apply to the case where the consignee is present and ready to take his consignment, but his language is general, and in terms is applicable to such a case. He says, " a carrier making known and regular transits, and having a warehouse and platform for the delivery of goods at the end of the transit, is discharged from liability as a carrier on placing such goods either on such platform, or in such warehouse, for delivery to the owner and consignee, and thenceforth is only a warehouseman."

This charge, as applied to a case where the consignee or his agent is present to receive his goods, is, we think, clearly erroneous. In such case it is the duty of the defendants not only to place the goods on the platform *" for delivery,"* but it is their duty to make delivery, and that duty pertains to them as carriers. The parties have entered into only one contract, and that is a contract by the defendants as common carriers, and the contract cannot be changed to one of warehousemen, unless the plaintiffs, by neglect to be present to take their goods, make the interposition of the relation of warehousemen necessary. The placing the goods on the platform in the manner these defendants are accustomed to do, is rather a preparatory step toward a delivery, than in itself a delivery. The transfer of the possession and custody of the goods to the consignee is regarded as an important part of the duty of the carrier. During this transfer the goods are pointed out and selected, and their condition is examined in the presence of both parties, that it may be seen whether they have come safely, without injury or depredation. The goods are usually placed upon the platform for the mere convenience of the carrier, and are there assorted and arranged by him before he is ready to commence delivery. And, surely, until the consignee can get his goods, they must be regarded as in the defendants' possession as carriers.

Cases were cited by counsel to show that, in some instances, delivery to a wharfinger or warehouseman has been held to

be a good substitute for delivery to the owner. But this is only in cases where the owner has failed to come in due time to take the goods himself. If he thus fails, then indeed the carrier discharges his duty by leaving the goods with a warehouseman for the owner. But it is only because the owner is not ready to take his property that it may be left in a warehouse for him.

But the case in the court below does not appear to have been tried upon the precise question thus far discussed. The plaintiffs did not put themselves upon the ground that their carman was actually present and waiting for the goods at the time of the fire, but on the broader ground that he used due diligence to get his goods, and that he was entitled to a reasonable time after their arrival to take them away, and that the defendants remained chargeable as common carriers until such reasonable time had expired. And the important point still remains to be considered, whether the plaintiffs are or are not correct in this broader claim.

We have already said that, in our judgment, the consignees are entitled to receive their goods from the defendants as common carriers, if they present themselves at the proper place and at the proper time for that purpose. The point now to be considered is what is that proper time. In order to avail themselves of their rights in this respect, must the consignees be on hand immediately on the arrival of the boat, and remain there constantly, without being absent even for their meals, until their goods are ready, and must they then immediately take them, or is a reasonable time to be allowed for these purposes?

We suppose it is generally more convenient for the carrier that there should be no rush immediately upon his arrival. We suppose it is more convenient for him that he should examine and arrange his lading, and compare it with his bills, and place it in order on his platform, before he commences to deliver goods to consignees. Where the amount of freight is large, and for a large number of persons, it is not unreasonable for the carrier to refuse to commence the delivery until the steamer is unladen, and the goods properly arranged

for the owners.    And, this being so, it seems to us that con-
signees should also be allowed a reasonable time to take away
their goods, so that they shall not be subjected to vexatious
and irritating delays and waste of time in waiting for their
turns.    It is for the interest and convenience of both parties
that the delivery should be deliberate, in order that mistakes
may be avoided, and that the goods may be subjected to a
careful examination, that it may be known whether the car-
rier has or has not carefully and properly discharged his duty
in the transportation.    In cases where the carrier has no
warehouse or conveniences for keeping the goods, he may
properly require that the consignee should be quite prompt,
or be visited with the consequences of a deposit in a ware-
house.    But where, as in this case, the defendants have com-
modious warehouses and platforms, and are doing an extensive
business, consignees ought to have a fair and reasonable op-
portunity to take their property, and until they have had such
opportunity and time, the goods do and ought to remain in
the care of the carrier as such.    Whatever reasons there are
for imposing a strict rule of responsibility during the transit,
exist and continue in full force until the consignee has rea-
sonable time to take the goods into his own care and custody.
The rule adopted in Massachusetts has the merit of being
definite and of easy application, and may, in many cases,
avoid a painful controversy as to what, under the circumstances,
is a reasonable time within which the consignee must appear
and take his goods.    But, on the other hand, that rule puts
an end to the carrier's responsibility as such, just where that
responsibility is of the highest value to the shipper.    Between
the deposit of the goods on the platform and their delivery
to the consignee, they are exposed to theft, depredation and
injury by strangers, and by the carriers' employees.    In mak-
ing delivery care is needed to avoid mistakes, and attention
required to see if the goods are uninjured.    During the whole
process of delivery until fully completed, the goods should
remain in the care of the carrier upon the full responsibility
pertaining to him as such, and he ought not to be allowed to
lay aside that responsibility, until the owner of the goods has

had a fair and reasonable time and opportunity to receive them.

In the case of *Gatliffe* v. *Bourne*, 4 Bingham, 333, the defendants, being common carriers by water, interposed a defence similar to that made by these defendants, by way of a special plea, which was demurred to, and in deciding the demurrer well taken Chief Justice TINDALL says, " the next special plea contains indeed the averment that, after the steam vessel had arrived in the port of London, the defendants were ready and willing to deliver the goods to the plaintiff, but that he was not there ready to receive them, whereupon the deendants landed the goods at the wharf. But this allegation is open to the objection that it does not appear that the plaintiff had a reasonable time or opportunity for receiving his goods from the vessel's side. The statement in the plea is compatible with the supposition that the steamboat arrived in the port at midnight, and proceeded at full speed to the wharf, and there immediately deposited the goods; facts which, whatever might be the readiness or willingness of the defendants to deliver, would make it impracticable for the plaintiff to receive them, if he had been there, and unreasonable to expect him to be there."

There are indeed particulars in which the case of *Gatliffe* v. *Bourne* differs somewhat from the case under our consideration. But we think Chief Justice TINDALL expresses the true general rule governing the duty of carriers, to wit, that they are bound as carriers to deliver the goods to the consignee, provided the consignee appears within a reasonable time to receive them, and that the consignee is entitled to a fair and reasonable opportunity to receive his goods, before the carrier can deliver them over to himself, or to another as warehouseman.

A new trial is therefore advised.

In this opinion the other judges concurred; except PARK, J., who did not sit.