CHARLES FAULKNER et al., Appellants, *v.* WILLIAM T. HART et al., Respondents.

The decisions of the court of one State upon a question of commercial law are not obligatory upon the courts of other States; and when such decisions are in conflict with the principles of the common law concurred in by the courts of this State, they will not control even as to contracts made here but to be performed in the State where such decisions were made.

*It seems*, however, that when the question arises under a State statute the construction placed upon the statute by the courts of the State, will control.

Plaintiffs contracted in New York with the N. & N. Y. T. Co. for the transportation of certain goods by that company from said city to Boston, and the delivery thereof to plaintiffs, who were the consignees. The goods were received by defendants, who were connecting carriers over the latter part of the route, and were residents of Massachusetts. Upon arrival of the goods at Boston they were called for, but a delivery refused until the next day as it was not convenient to deliver at the time. They were unloaded the same afternoon and placed in defendants' warehouse, but too late for delivery; and during the night the warehouse with the goods was destroyed by fire. In an action to recover the loss, *held*, that defendants were liable; and this, although under the decisions of the courts of Massachusetts, the operators of a railroad, as matter of law, cease to be common carriers and become warehousemen, when the duty of transportation is completed and goods are deposited in a warehouse awaiting the orders of the owner or consignee.

*Faulkner* v. *Hart* (12 J. & S. 471), reversed.

(Argued October 1, 1880 ; decided November 9, 1880.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, in favor of defendants, entered upon a case submitted under section 1279 of the Code of Civil Procedure. (Reported below, 12 J. & S. 471.)

The question submitted was as to the liability of defendants common carriers for the loss of certain goods.

The substance of the facts set forth in the case submitted appears in the opinion.

*Samuel Hand* for appellants. By the law merchant, the defendants are liable for the loss of the goods under the cir-

cumstances stated.. They were bound to give the consignees a reasonable opportunity to remove them. (2 Kent's Com. 605; *McAndrew* v. *Whitlock*, 52 N. Y. 40; *Richardson* v. *Goddard*, 23 How. [U. S.] 28, 39; 4 Bing. N. C. 314; 3 Mann. & Gr. 337; 11 Clarke & Fin. 45; *Price* v. *Powell*, 3 Comst. 322; *Zinn* v. *N. J. Steamboat Co.*, 49 N. Y. 442; *Sherman* v. *Hudson R. R. R.*, 64 id. 254; *The Steamboat "Sultana"* v. *Chapman*, 5 Wis. 454; *Slade* v. *Payne*, 14 La. Ann. 453; *Dean* v. *Vaccaro*, 2 Head, 489; *The "Paytona,"* 2 Curtis's C. C. 21; *Graves* v. *Hartford & N. Y. Co.*, 38 Conn. 143; *Chicago & Rock Island R. R.* v. *Warren*, 16 Ill. 502; *Moses* v. *Boston & Me. R. R.*, 32 N. H. 523; *The "Tangier,"* 1 Clifford, 396; Redfield on Carriers, §§ 110, 111; Story on Bailments, § 545.) The decisions of Massachusetts holding to the contrary are not binding upon the courts of this State. (*Aymar* v. *Sheldon*, 12 Wend. 439; Benedict on Admiralty, § 313, *b*; 1 Kent's Com. 477; *Swift* v. *Tyson*, 16 Peters, 1, 19; *Luke* v. *Lynde*, 2 Burr. 882, 887; *Meade* v. *Beale*, Taney, 339; *Austin* v. *Miller*, 5 McLean, 189; *The Ship "George,"* Olcott, 89; *Pine Grove* v. *Talcott*, 19 Wall. 666; *Robinson* v. *Commercial Ins. Co.*, 3 Sumner, 220, 225; 1 Blackstone's Com. 273; 4 id. 67; 1 Clifford, 396; *Richardson* v. *Goddard*, 23 How. [U. S.] 38; *Moses* v. *Boston & Me. R. R. Co.*, 32 N. H. 523.) The legislature of Massachusetts has no power to make a law impairing the obligation of a contract to deliver to the consignee. (*Gelpcke* v. *Dubuque*, 1 Wall. 175, 206; *Olcott* v. *Fond du Lac*, 16 id. 678.) Even a local usage to the contrary will not avail in an action against a carrier on an agreement to deliver to the consignee. (*Ostrander* v. *Brown*, 15 Johns. 39; *Collender* v. *Dinsmore*, 55 N. Y. 200; 1 Greenl. Ev., § 295; Broom's Legal Maxims, 477.)

*George H. Forster* for respondents. Defendants were not liable as common carriers, and were liable as warehousemen, only for ordinary care, although the owner of the goods had no opportunity to take them away before the fire. (*Norway Plains Company* v. *Boston & Me. R. R.*, 1 Gray, 263; in

*Rice et al.* v. *Hart et al.*, 118 Mass. 201; *Sessions* v. *Western R. R.*, 16 Gray, 132; *Rice* v. *Boston & W. R. R.*, 98 Mass. 312; *Miller* v. *Mansfield*, 112 id. 260; *Stowe* v. *N. Y., Boston & Prov. R. R.*, 113 id. 521.) Inasmuch as delivery of the goods was to be made in Boston, where the loss occurred, the law of Massachusetts should control the rights of the parties with respect to such delivery. (*Barber* v. *Wheeler*, 6 Am. Rep. 434; *Grey* v. *Jackson*, 12 id. 1; *Curtis* v. *D., L. & W.*, 74 N. Y. 116; *Knowlton* v. *Erie R. R.*, 19 Ohio St. 260 [2 Am. Rep. 395]; *M. & St. P. R. R.* v. *Smith* [Ills. S. C. 1875], 7 Chic. Leg. News, 174; *Norway Plains Co.* v. *B. & M. R. R.*, 1 Gray, 263; *Rice* v. *Hart*, 118 Mass. 201.) It is well settled that a mere usage, which is matter of evidence, is, when proven, to control the question of delivery. (Angell on Carriers, § 301; *McMasters* v. *Penn. R. R.*, 69 Penn. St. 374.) Defendants are not liable as common carriers, because their contract as carriers had been fully performed, and matters connected with the performance are regulated by the law prevailing at the place of performance. (*Scudder* v. *Union Bank*, 1 Otto [91 U. S.], 413; *Mills* v. *Mich. Cent. R. R.*, 45 N. Y. 626; *Whitford* v. *Panama R. R.*, 23 id. 465; *Elmendorf* v. *Taylor*, 10 Wheat. 152; *Shelby* v. *Guy*, 11 id. 367; *Town of S. Ottawa* v. *Perkins*, 94 U. S. 260; *Fairfield* v. *The County of Gallatin.*) Defendants were not carriers between New York and Boston. (Story on Contracts, § 655; 1 Chitty on Contracts [11th ed.] 130; *Scudder* v. *Union Nat. Bank*, 1 Otto. 413; *M. & St. P. R. R.* v. *Smith* [Ill. S. C. 1875], 7 Chic. Leg. News, 174; *Pomeroy* v. *Ainsworth*, 22 Barb. 118; *Andrews* v. *Pond*, 13 Peters, 78; *Kessler* v. *N. Y. C. & H. R. R. R. Co.*, 61 N. Y. 538; *Pope* v. *Nickerson*, 3 Story, 474, 485; Addison on Contracts, § 240.) They cannot, therefore, be held in this case upon any supposed contract made by them within the State of New York, or its jurisdiction. (*Sherman* v. *Hudson River R. R. Co.*, 64 N. Y. 260; *Ætna Ins. Co.* v. *Wheeler*, 49 id. 616; *Hunt* v. *N. Y. & Erie R. R. Co.*, 1 Hilton, 228; *McDonald* v. *Western R. R. Co.*, 34 N. Y. 497; *Rogers* v. *Wheeler*, 52 id. 262; *O'Neill* v. *N. Y. C. & H. R. R. R.*

*R. Co.*, 60 id.138.) The general obligation created by the law of the place of delivery, in respect to the mode of delivery by a carrier, controls. (*Rawson* v. *Holland,* 59 N. Y. 613, 615, 616; *Van Santvoord* v. *St. John,* 6 Hill, 157; *Goold* v. *Chapin,* 20 N. Y. 259; *McDonald* v. *Western R. R. Co.,* 34 id. 497; *Root* v. *The Great Western R. R. Co.,* 45 id. 524; *Mills* v. *Michigan Cent. R. R. Co.*, id. 622; *Henner* v. *Buffalo & State Line R. R. Co.,* 44 id. 505, 511; *Fenshaw* v. *Rowland,* 54 id. 242; *Pelton* v. *Rensselaer & Saratoga R. R. Co.*, id. 214; *Nutting* v. *Conn. River R. R. Co.,* 1 Gray, 502.)

MILLER, J. The goods, for the value of which the plaintiffs claim to recover in this action, were shipped at New York, to be transported to and were consigned to them at Boston; and they were called for on the day of their arrival, but a delivery was refused until the next day, because it was not convenient for the defendant to deliver them. They were unloaded from the cars the same afternoon, but too late for delivery, and were placed during the night of that day in the defendant's warehouse, and before the plaintiffs had an opportunity to make another demand the warehouse, together with the goods, was destroyed by fire. The plaintiffs were doing business, both in New York and Boston, and all resided in Boston except one of them, who lived in New Jersey. The contract for the transportation of the goods was made in New York, with the Norwich and New York Transportation Company, in behalf of itself and the connecting carriers to Boston, and they were to be conveyed to Boston. The last part of the route they were placed in cars upon the road operated by the defendants.

The rule as to the liability of carriers under the facts stated is well established by the law merchant, and the authorities are numerous which sustain the position that the carrier is bound to pay for the loss of the goods destroyed. It is his duty not only to transport the goods, but he has not performed his entire contract as a common carrier until he has delivered the goods, or offered to deliver them to the consignee, or has

done what is equivalent, by giving to the consignee, if he can be found, due notice after their arrival, and by furnishing him a reasonable time thereafter to take charge of, or to remove the same. (*Gatliffe* v. *Bourne*, 4 Bing. N. C. 314; *S. C.*, 11 Clarke & Fin. 45; *Price* v. *Powell*, 3 Comst. 322; *Zinn* v. *N. J. St. Co.*, 49 N. Y. 442; *Sherman* v. *Hudson River R. R. Co.*, 64 id. 254; *The "Sultana"* v. *Chapman*, 5 Wis. 454; *Sleade* v. *Payne*, 14 La. Ann. 453; *Graves* v. *H. & N. Y. St. Co.*, 38 Conn. 143; *C. & R. I. R. R.* v. *Warren*, 16 Ill. 502; *Moses* v. *B. & M. R. R.*, 32 N. H. 523; *The Tangier*, 1 Clifford, 396.)

In view of the rule laid down in the authorities cited, there would appear to be no serious question as to the plaintiffs' claim to recover for the value of the goods actually destroyed. The right of the plaintiffs to recover is resisted, and exemption from liability is claimed, by reason of the decisions of the courts of the State of Massachusetts, holding adversely to the rule which is established at common law, and which, as we have seen, has been generally adopted and sustained in this country and in England. The decisions of that State establish that the proprietors of a railroad, who transport goods for hire and deposit them in a warehouse until the owner or consignee has a reasonable time to take them away, are not liable as common carriers for their loss by fire, without negligence or default on their part; that the railroad corporation ceases to be a common carrier, and becomes a warehouseman, as a matter of law, when it has completed the duty of transportation, and has assumed the position of a warehouseman, as a matter of fact, and according to the usages and necessities of the business in which it is engaged. (*Norway Plains Co.* v. *B. & M. R. R. Co.*, 1 Gray, 263; *Rice* v. *Hart*, 118 Mass. 201.) These decisions are entitled to the highest respect; but like all other adjudications, are the subject of revisal, limitation, and even to be overruled in the court in which they originated. The same right exists in other courts to consider and pass upon the same question; and how far they should be allowed to control their decisions in a cause of action where the contract was made in one State, and

performed in part in another State where the law has been de-
cided differently, is the question now to be determined.    It was
long since held in this State that we could not break in upon
the settled principles of our commercial law to accommodate
them to those of any country.    (*Aymar* v. *Sheldon*, 12 Wend.
439.)    This principle is well established in regard to all con-
tracts of a commercial character; and so far as may be practica-
ble, it is of no little importance that the rule should be har-
monious and uniform.    Contracts of this description have been
the subject of frequent consideration in the Federal courts,
and the decisions have been direct and clear that while the
decisions of local courts in reference to matters purely local in
the States are obligatory throughout the country, they are not
conclusive and final as to questions of commercial law.    In
*Swift* v. *Tyson* (16 Peters, 19), the court say : " The true inter-
pretation and effect of contracts and other instruments of a
commercial nature are to be sought, not in the decisions of
local tribunals, but in the general principles and doctrines of
commercial jurisprudence.    Undoubtedly the decisions of the
local tribunals upon such subjects are entitled to, and will
receive, the most deliberate attention and respect of this court,
but they cannot furnish positive rules or conclusive authority
by which our own judgments are to be bound up and gov-
erned."    In a recent case (*Oates* v. *Nat. Bank*, 100 U. S.
239), the State court in Alabama held that by the rules of the
commercial law, one who receives a promissory note as col-
lateral security for a pre-existing debt does not become a pur-
chaser for value in the course of business, so as to cut off equi-
ties which the maker may have against the payee; and on
appeal it was held that the courts of the United States are not
bound by the decisions of the State courts upon questions of
commercial law.    This principle has been repeatedly upheld in
other cases.    (*Meade* v. *Beale*, Taney, 339, 360; *Austen* v.
*Miller*, 5 McLean, 153; *The Ship George*, Olcott, 89 ; *Pine* '
*Grove* v. *Talcott*, 19 Wall. 666 ; *Robinson* v. *Com. Ins. Co.*,
3 Sumn. 220.)    In *Meade* v. *Beale* (*supra*) it is said : " Where
the State court does not decide a case upon the particular law

of the State or established usage, but upon general principles of commercial law, if it falls into error, that erroneous decision is not regarded as conclusive."

From the authorities cited it follows that if the higher court in the State of Massachusetts has made an erroneous decision, wrong in principle and contrary to a well-settled rule of commercial law in the English courts, in the Supreme Court of the United States, and many of the State courts, and especially adverse to the decisions of this court, it should not be followed here; and it is not only the right, but the duty of this court to adhere to its own decisions. Any other rule would lead to confusion in regard to a principle of general application; for if the doctrine of the Massachusetts court is to prevail, the right of the aggrieved party might depend upon the fact whether the action was brought in the Federal or the State court; and if the action in this case had been brought in the Circuit Court of the United States for the State of Massachusetts, the plaintiffs would be entitled to recover, while in the State court a different result would prevail. (*Richardson* v. *Goddard*, 23 How. [U. S.] 38; *The Tangier*, 1 Clifford, 396; *Moses* v. *B. & M. R. R.*, 32 N. H. 523.) This court has the same authority to disregard the Massachusetts decisions, in a case involving a commercial question, as that court had to establish a rule adverse to the decisions of this court, as was done, virtually, in the cases cited. Nor is it important to determine whether, upon a reconsideration, any different rule would have been adopted. It is sufficient to say that in reference to a law *not* of a single State but affecting the commerce of the world, the decisions of the courts of such State are not obligatory upon the courts of other States or countries.

The learned counsel for the respondents argues that, as the delivery of the goods was to be made in Boston, where they were destroyed, the law of Massachusetts should control in respect to such delivery; and we are referred to several decisions which, it is claimed, sustain this doctrine. (*Barter* v. *Wheeler*, 49 N. H. 9; *Gray* v. *Jackson*, 51 id. 9; *Knowlton* v. *Erie Railway Co.*, 19 Ohio St. 260; *M. & St. P. R. Co.* v.

*Smith*, 7 Chicago Leg. News, 174.)   While these cases uphold the general principle that where the contract is to be performed partly in one country and partly in another country, each portion is to be interpreted according to the laws of the country where it is to be performed — a rule which is fully sustained by authority, (see Story on Cont., § 655 ; *Pope* v. *Nickerson*, 3 Story, 474, 485 ; *Scudder* v. *Union Nat. Bank*, 1 Otto, 413 ; *Pomeroy* v. *Ainsworth*, 22 Barb. 118), none of them hold that where a great principle of commercial law has been established, which is universally acknowledged and acquiesced in, that the law announced by the courts of a single State can overturn that principle and control the decisions of the courts of another and a distant State.   No such question arose in any of the cases cited ; and the answer to the position taken, that the decision of the local courts should control, is that such decisions are not, under the circumstances, a correct interpretation of the rule of law in such a case, and are not the accepted law of the land.   It is erroneous and must fall, for the reason that it cannot be upheld, either upon principle or authority.

Nor are any of the authorities cited applicable to the case considered.   As to those cited from the State of New Hampshire, it may be remarked that the precise question was presented in *Moses* v. *B. & M. R. R. Co.* (32 N. H. 523), where the goods were transported to Boston and burned before the consignee had an opportunity to remove them ; and the authority of the Massachusetts cases was repudiated, and it was said that by the rule there laid down the salutary principles of the common law are sacrificed to considerations of convenience and expediency, in the simplicity and precise and practical character of the rule which it established.   The case of *Curtis* v. *D., L. & W. R. R. Co.* (74 N. Y. 116) involved a question as to the effect of a local statute of Pennsylvania, limiting the defendant's liability, upon the law applicable to such a case in the State of New York.   It was held that the *lex loci contractus* did not control, the place of delivery being a material and important part of the contract and in contemplation of the parties

at the time.    It was said that it was a reasonable inference that it was entered into with reference to the laws of the place where delivered.    The case last cited did not involve any such question as is here presented, as there was no conflict in reference to the decisions of the courts, and no question made as to any general rule of commercial law being involved, as is the case here.

If there had been a positive statute of the State of Massachusetts providing that the carrier's liability should cease when the goods had been deposited at the end of the route in a suitable warehouse, a different question would arise, and it might well be contended that, as the question arose under the statute of that State, the question of liability would depend upon the construction placed upon such statute by the court in Massachusetts, in accordance with the decisions of the courts of this State and the Supreme Court of the United States. (*Jessup* v. *Carnegie*, 80 N. Y. 441; *Mills* v. *M. C. R. R. Co.*, 45 id. 626; *Whitford* v. *Panama R. R. Co.*, 23 id. 465; *Elmendorf* v. *Taylor*, 10 Wheat. 152; *Shelby* v. *Guy*, 11 id. 367; *Town of Ottawa* v. *Perkins*, 94 U. S. 260; *Fairfield* v. *County of Gallatin*, MS. Op., U. S. Sup. Ct.) But no such question arises in the case at bar.    So also if the Massachusetts cases were decisive as to the law upon the question considered, it might well be urged that the plaintiffs entered into the contract having them in view.    But, as we have seen, they are not conclusive, and the real point is, what is the common-law rule? And the courts of Massachusetts having decided one way, and the courts of the United States and of this State, as well as those of other States and countries, differently, it is open, in a case arising in the courts of this State, to determine the true rule.    It is the same subject, and involves the precise point, whether the common law shall prevail, and whether the decision of the State court is erroneous. . The question is not as to the application of a local statute or a local law, but one of a comprehensive character, affecting a general rule applicable to all contracts of the nature of the one now involved.

The fact that the defendants were not carriers between New

York and Boston, but only for a portion of the route, and that they made no contract directly with the plaintiffs, cannot affect the question as to the liability upon the contract made on their behalf for transportation over their portion of the route. As the original contract was made in New York for a through transportation, the connecting carrier was entitled to all the benefits of the contract, as well as to any special exemptions it contained. (*Maghée* v. *C. & A. R. R. Co.*, 45 N. Y. 514, 521; *Lamb* v. *The Same*, 46 id. 271.) For the same reason they would be subject to all the obligations incurred thereby. The contract between the first carrier and the connecting carrier is deemed to have been made for the shipper's benefit, and is ratified by bringing the suit. (*Green* v. *Clark*, 2 Kern. 343.) And each of the connecting lines is responsible for injuries on its own line, except where there is an express contract for carriage beyond the terminus. (*Condict* v. *G. T. R. R. Co.*, 54 N. Y. 500; *Root* v. *G. W. R. R. Co.*, 45 id. 524; *Sherman* v. *H. R. R. R. Co.*, 64 id. 260.) The contract, being made in New York, is binding upon the plaintiffs, the shippers, and the defendants, the connecting carriers, so far as they undertook to perform it; and although their liability arose at the end of their route, yet it was under the contract as made in New York.

We are referred to a number of cases by the learned counsel for the respondents, to sustain the proposition that the general obligation created by the law of the place of delivery, in respect to the mode of delivery by a carrier, controls; and it is urged that when by the law of the place of delivery the carrier had a right to store the goods, the nature of the bailment is changed, and the carrier is relieved from the responsibility originally assumed, and the liability of a warehouseman is substituted. We do not deem it necessary to controvert the correctness of the rule laid down, where it does not interfere with the general principles and doctrines of commercial jurisprudence; but there is no case cited which holds that the court of another State, where an action is pending, may not adhere to its own rules and disregard the decision of a State which overrules a great principle. As we have seen, the United States

Supreme Court have refused to sustain the decisions of the State court when violating a great principle; and the rule is a sound one which upholds the position that the decisions of the State court should not be followed to such an extent as to make a sacrifice of truth, justice and law. (*Gelpcke* v. *Dubuque*, 1 Wall. 175, 205; *Olcott* v. *Supervisors*, 16 id. 678.) It is upon a principle of comity, that one State recognizes and admits the operation of the laws of another State within its own jurisdiction, where such law is not contrary to its own rules of policy, or to abstract right, or the promotion of justice and morality; but this principle should never be carried to the extent of holding that a suitor in its courts is debarred from the maintenance of his just rights according to its well-established decisions and laws, and the general principles of the common law which it has fully recognized and which are almost universally regarded and accepted, in reference to the question presented, wherever the common law prevails. No rule of comity demands any such sacrifice in the business intercourse between the people of the different States, and great injustice might follow by yielding to such a principle, and in sustaining a rule of law which was wrong in itself, hostile to the policy and law of the State where the contract was made, and adverse to the general current of authority elsewhere. (*King* v. *Sarria*, 69 N. Y. 24.)

In the consideration and determination of the case before us, it is worthy of notice that the contract made in New York, as the record shows, was, in effect, in conformity with the usual course of business, that the goods were to be delivered to the consignees. In *Rice* v. *Hart* (*supra*), the contract was merely to transport to Boston, and was silent as to delivery. It may, perhaps, be doubted whether the agreement to deliver to the plaintiffs as consignees was satisfied by a delivery to the defendants, especially after a demand by the plaintiffs and a refusal to deliver to them.

If the shipper was entitled to the benefit of a contract to deliver the goods to the consignees without any restriction, it is not entirely clear that the rule laid down in the Massachu-

424 PAKALINSKY *v.* N. Y. CENT. & HUD. R. R. R. CO. [Nov., .

Statement of case.

setts decisions is applicable. Without, however, expressing a decisive opinion upon the question last discussed, for the reasons already apparent, the rule adopted in the Massachusetts cases cannot be sustained. It should not be overlooked that the point presented does not involve solely a question as to a local law, but part of a system of general commercial law. That the court in Massachusetts had decided the law contrary to what it was is not controlling; for it may be assumed, even if the parties had knowledge of the decision, that they knew it was contrary to the current of authority in similar cases, and contracted, having in view the law as it actually existed. Like an unconstitutional law, void of itself, the decision was not the law, and is not to be regarded as authority for that reason.

The judgment should be reversed, and judgment should be rendered in favor of the plaintiffs for $6,156.95, with interest from November 7, 1872, with costs.

All concur, FOLGER, Ch. J., and EARL, J., concurring in result.

Judgment accordingly.