HENRY A. RICE & others *vs.* WILLIAM T. HART & others.

Suffolk.   Nov. 10, 1874. — Sept. 2, 1875.   WELLS & DEVENS, JJ., absent.

A railroad corporation ceases to be a common carrier and becomes a warehouseman, as matter of law, when it has completed the duty of transportation and assumed the position of warehouseman, as matter of fact and according to the usages and necessities of the business in which it is engaged.

Goods delivered to a railroad corporation, as a common carrier, for transportation, reached the point of destination at half past three in the afternoon of Saturday, in one of the rear cars of a long freight train, which on account of its length was divided into sections, and these were moved up separately to the freight station, and their contents discharged.   The consignee's teamster, who was sent for the goods, reached the station at a quarter past four of the same afternoon, and remained until five, at which time the car containing the goods had not been moved up to the station or discharged.   He was told by the agents of the carrier that the goods would not be ready for delivery that day, but that when reached they would be placed in the freight station near the door, where he could get them on the following Monday.   The goods were discharged and placed in the freight station on Saturday, but too late for delivery, and the building and its contents were destroyed by fire that night, without any negligence on the part of the railroad corporation.   *Held,* that the liability of the railroad corporation as a carrier was ended before the loss of the goods.

CONTRACT against William T. Hart and others, trustees under a mortgage executed by the Boston, Hartford and Erie Railroad Company, and in possession of and operating the said railroad, to recover the value of forty-three bags of wool, valued at $4692.37, delivered by the plaintiffs to the defendants as common carriers, to be transported from New York to Boston.   The case was submitted to the judgment of this court on agreed facts in substance as follows :

The defendants are common carriers, and as such received from the plaintiffs, for transportation over their railroad, the wool in question.   The wool reached Boston in one of the rear cars of a long train over the defendants' road on Saturday, November 9, 1872, about half past three o'clock in the afternoon.   The train was much longer than the freight station and platform at which the same was to be discharged, and for this reason was broken into sections, which were moved up separately and their contents discharged.   The plaintiffs sent a man and wagon to the defendants' yard to receive and carry away the wool, who reached the freight station about a quarter past four in the afternoon, and

remained until about five, at which time the cars which contained the wool had not been moved up to the freight station or dis- charged ; and the driver was told by one of the defendants' agents that the wool would not be ready for delivery that day, but that when it was reached it would be put in the freight station near the door on Broad Street, where he could easily get at it and load it into his wagon on Monday. The wool was discharged from the cars into the freight warehouse on Saturday afternoon, but not until too late for its delivery that day to the plaintiffs ; and the building and its contents, including the plaintiffs' wool, were totally consumed by fire during the night of Saturday. The yard and freight station of the defendants' road, and of the other railroads in Boston, are closed for the delivery of freight at half- past five in the afternoon on Saturday, and are not again open for business until Monday morning, and were so closed on the Sat- urday in question. The fire was not occasioned by the fault or neglect of the defendants, nor are they chargeable with neglect for not removing the plaintiffs' wool when it became apparent that the building where it was stored would be destroyed, nor with want of diligence in discharging said wool from their cars on Saturday, other than such as may be implied from the forego- ing facts. The value of the plaintiffs' merchandise destroyed by the fire is correctly stated in the declaration.

If in the opinion of the court the defendants are liable for the loss of said merchandise, judgment is to be entered for the plain- tiffs for the value of said merchandise, and interest from the date of the writ ; otherwise, judgment for the defendants.

*G. W. Baldwin*, for the plaintiffs. 1. This case is distinguish- able in its facts from that of *Norway Plains Co.* v. *Boston & Maine Railroad*, 1 Gray, 263. In that case, the plaintiffs' agent consulted his own convenience in going away, and the goods were subsequently stored for his accommodation. In the case at bar the plaintiffs' agent had no choice and exercised no discretion in the matter, and was in no way responsible for what afterwards occurred.

The point decided in the case of the *Norway Plains Co.* is, that railroad corporations, as common carriers, are not bound to actually deliver the goods to the consignee ; and that if upon the arrival of the goods the consignee is not there ready to receive

them, " and in consequence of this they are placed in the depot, the transit ceases," "because he must be presumed to have assented thereby to such action on the part of the corporation," and " that delivery by themselves, as common carriers, to themselves, as keepers for hire, conformably to the agreement of both parties, is a delivery which discharges their responsibility as common car- riers." The whole reasoning of the court is founded upon this presumed agreement. But this fact does not exist in the case at bar. On the contrary, it appears affirmatively that the plaintiffs were present and ready to receive the goods, and were compelled by the defendants' agents to go away without them, so that the very foundation of the presumption is gone.

The opinion should also be read in the light of the cases referred to by the court in its support. In *Thomas* v. *Boston & Providence Railroad*, 10 Met. 472, Hubbard, J., says : " Where such suitable warehouses are provided, and the goods, which are not called for on their arrival at the places of destination, are un-laded and separated from the goods of other persons, and stored safely in such warehouses or depots, the duty of the proprietors as common carriers is, in our judgment, terminated." See also *Garside* v. *Trent & Mersey Navigation*, 4 T. R. 581 ; *Rowe* v. *Pickford*, 8 Taunt. 83 ; *In re Webb*, 8 Taunt. 443. It is submitted that the decision in the *Norway Plains Company case* was intended to apply and not to extend the doctrine of these cases. This doctrine, with its limitations, has been reaffirmed by this court in the recent case of *Bickford* v. *Metropolitan Steamship Co.* 109 Mass. 151. See also *Hill Manuf. Co.* v. *Boston & Low .'l Railroad*, 104 Mass. 122 ; *Stowe* v. *New York, Boston & Prov- idence Railroad*, 113 Mass. 521.

2. If the doctrine of *Norway Plains Co.* v. *Boston & Maine Railroad* leads to any other conclusion, it is submitted that to that extent it is a fit subject for reconsideration, and that it should be brought into harmony with the later English and American authorities. The English rule laid down by Tindal, C. J., in *Gat liffe* v. *Bourne*, 4 Bing. N. C. 314, and affirmed by the House of Lords in 11 Cl. & Fin. 45, has met with very general approval, both in that country and this. It holds that carriers are bound to deliver the goods to the consignee, provided the consignee ap- pears within a reasonable time to receive them, and that the con-

signee is entitled to a fair and reasonable opportunity to receive his goods before the carrier can deliver them over to himself or to another as warehouseman. To the same effect is the rule adopted by the Supreme Court of the United States in *The Eddy*, 5 Wall. 481 ; and in *Richardson* v. *Goddard*, 23 How. 28.

The courts of Illinois, Indiana, Iowa and Pennsylvania are sometimes referred to as sustaining the Massachusetts doctrine. But none of them go so far as to establish the arbitrary rule that the moment the goods are deposited in the carrier's warehouse, that moment his liability as a carrier ends. *Porter* v. *Chicago Railroad*, 20 Ill. 407. *Chicago Railroad* v. *Scott*, 42 Ill. 132. *Bansemer* v. *Toledo Railway*, 25 Ind. 434. The case of *Francis* v. *Dubuque Railroad*, 25 Iowa, 60, turns upon the presumed assent of the consignee, signified by his failure to receive the goods on their arrival. And *McCarty* v. *New York & Erie Railroad*, 30 Penn. St. 247, which is the leading case in Pennsylvania, adopts the rule laid down in *Goold* v. *Chapin*, 10 Barb. 612 : "It must be implied in every contract of this nature, that if the consignee is not found, or does not immediately accept the goods when offered, the carrier may, if he so elect, keep them as bailee in deposit."

Most of the American cases hold that the liability of the carrier continues until a reasonable opportunity has been afforded the consignee, after the arrival of the goods, to take them away. *Moses* v. *Boston & Maine Railroad*, 32 N. H. 523. *Wood* v. *Crocker*, 18 Wisc. 345. *Wood* v. *Milwaukee Railway*, 27 Wisc. 541. *Parker* v. *Milwaukee Railway*, 30 Wisc. 689. *Conkey* v. *Milwaukee Railway*, 31 Wisc. 619. *McDonald* v. *Western Railroad*, 34 N. Y. 497. *Redmond* v. *Liverpool Steamboat Co.* 46 N. Y. 578. *Zinn* v. *New Jersey Steamboat Co.* 49 N. Y. 442. *McAndrew* v. *Whitlock*, 52 N. Y. 40. *Ouimit* v. *Henshaw*, 35 Vt. 605. *Blumenthal* v. *Brainerd*, 38 Vt. 402. *Alabama Railroad* v. *Kidd*, 35 Ala. 209. *Mobile Railroad* v. *Prewitt*, 46 Ala. 63. *Graves* v. *Hartford Steamboat Co.* 38 Conn. 143. *McMillan* v. *Michigan Railroad*, 16 Mich. 79. *Richardson* v. *Goddard*, 23 How. 28. *Railroad Co.* v. *Manufacturing Co.* 16 Wall. 318. *The Mary Washington* v. *Ayres*, 5 Am. Law Reg. (N. S.) 692. *Maignan* v. *New Orleans Railroad*, 24 La. An. 333. The general result has been very well stated by Seymour, J., in *Graves* v. *Hartford*

*Steamboat Co.*, which is the most recent case upon the subject : " The rule adopted in Massachusetts has the merit of being definite and of easy application, and may, in many cases, avoid a painful controversy as to what, under the circumstances, is a reasonable time within which the consignee must appear and take his goods. But on the other hand, that rule puts an end to the carrier's responsibility, as such, just where that responsibility is of the highest value to the shipper. Between the deposit of the goods on the platform and their delivery to the consignee, they are exposed to theft, depredation and injury by strangers, and by the carrier's employees. In making the delivery, care is needed to avoid mistakes, and attention required to see if the goods are uninjured.. During the whole process of delivery, until fully completed, the goods should remain in the care of the carrier, upon the full responsibility pertaining to him as such, and he ought not to be allowed to lay aside that responsibility until the owner of the goods has had a fair and reasonable time and oppor tunity to receive them." See also an extended analysis and classification of the American cases prior to 1867, by Cooley, C. J., in *McMillan* v. *Michigan Railroad*, 16 Mich. 103 ; and in 2 Kent Com. (12th ed.) 604 ; 2 Redf. Railways, (5th ed.) 77 ; Redf. Carriers, § 110 ; and note to *Graves* v. *Hartford Steamboat Co.* 12 Am. Law Reg. (N. S.) 31.

The case of *Shepherd* v. *Bristol Railway*, L. R. 3 Ex. 189, was decided upon its peculiar circumstances. The plaintiff's cattle arrived at the defendant's station in London on Sunday morning. " The plaintiff's servant was there, and had it not been Sunday would at once have driven them away. But being Sunday, and being liable to a fine if he drove them on that day through the streets, he was permitted to put them into a pen, where he fed them and shut them up." During the day two of them were killed. Bramwell, B., who gave the opinion of the majority of the court, says : " If there is any evidence of a refusal to deliver on the Sunday, which I doubt, nevertheless, I as juryman cannot find such refusal." Martin, B., dissents, upon the ground that the " liability as carriers does not end until there has been a delivery in what is the ordinary and usual way," and adds : " This is a pure question of fact, and in my opinion they were not delivered, either actually or constructively."

*W. G. Russell & R. R. Bishop*, for the defendants. Under the settled rule of law in this Commonwealth, the liability of the proprietors of a railroad as common carriers of goods ceases when the goods have been unladen from the car and placed upon the platform in the depot at their place of destination. The transit of the goods is then determined, and the carrier is thereafter liable only as a warehouseman, and not for loss occurring without fault on his part. *Thomas v. Boston & Providence Railroad*, 10 Met. 472. *Norway Plains Co. v. Boston & Maine Railroad*, 1 Gray, 263. *Sessions v. Western Railroad*, 16 Gray, 132. *Rice v. Boston & Worcester Railroad*, 98 Mass. 212. *Denny v. New York Central Railroad*, 13 Gray, 481. The facts agreed bring this case in every respect within the rule of *Norway Plains Co. v. Boston & Maine Railroad.* In that case, as in this, there was delay in the arrival and delivery of the goods ; the agent of the consignee in that case, as in this, was at the depot after the arrival of the goods, and was correctly informed that they were in the rear part of the train, and would not be reached for delivery during business hours of that day ; and in each case the delay in the delivery arose from the fact that the train was longer than the freight station. In each case the goods were placed upon the platform too late for delivery on the day of arrival, and were burned by accidental fire on the ensuing night. The Massachusetts rule has been followed in *Porter v. Chicago Railroad*, 20 Ill. 407 ; *New Albany Railroad v. Campbell*, 12 Ind. 55 ; *Bansemer v. Toledo Railway*, 25 Ind. 434 ; *Francis v. Dubuque Railroad*, 25 Iowa, 60 ; *Jackson v. Sacramento Valley Railroad*, 23 Cal. 268, 272 ; *Hilliard v. Wilmington Railroad*, 6 Jones, (No. Car.) 343 ; *Neal v. Wilmington Railroad*, 8 Jones, (No. Car.) 482. See also *Shepherd v. Bristol Railway*, L. R. 3 Ex. 189. Of the cases cited against the Massachusetts rule, those which relate to the liability of the carrier for goods which have not reached their ultimate destination, but which are in his hands for delivery to the next carrier in the line of transportation, are not in point. *Railroad Co. v. Manufacturing Co.* 16 Wall. 318.

GRAY, C. J. This case is not distinguishable from that of *Norway Plains Co. v. Boston & Maine Railroad*, 1 Gray, 263.

In that case, so far as one lot of goods was concerned, as in this, the agent of the consignee was at the station after the ar

rival of the goods, prepared to receive them ; but the defendants were not, and, if he had remained, would not have been, ready to deliver them in time to be put in a place of safety elsewhere on that day, and they were destroyed in the station by fire the ensuing night; and Chief Justice Shaw, in delivering the opinion, said that the court considered all the circumstances stated, as to the agent calling for the goods, waiting, and at last leaving the depot before they were ready, to be immaterial.

The court had previously held in *Thomas* v. *Boston & Providence Railroad*, 10 Met. 472, that where suitable warehouses were provided by a railroad corporation, and goods, not called for on their arrival at the place of destination, were unladen and separated from the goods of other persons, and stored safely in such warehouses, the duty of the corporation as common carriers was terminated.

The judgment in *Norway Plains Co.* v. *Boston & Maine Railroad* went further ; and was put upon the ground that, from the necessary condition of the business of railroad corporations, and from their practice to have platforms on which to place goods from the cars in the first instance, and warehouse accommodations by which they may be securely stored, the goods of each consignment by themselves, in accessible places, ready to be delivered, the whole duty assumed by the railroad corporation is to carry the goods safely to the place of destination and there discharge them upon the platform, and then and there deliver them to the consignee or party entitled to receive them, if he is there ready to take them forthwith, or, if he is not there ready to take them, then to place them securely and keep them a reasonable time, ready to be delivered when called for ; that delivery from themselves as common carriers, to themselves as keepers for hire, discharges their responsibility as common carriers ; that they are responsible as common carriers until the goods are removed from the cars and placed on the platform ; that if, on account of their arrival in the night, or at any other time when by the usage and course of business the doors of the merchandise depot or warehouse are closed, or for any other cause, they cannot then be delivered, or if for any reason the consignee is not there ready to receive them, it is the duty of the company to store them and preserve them safely, under the charge of competent and

careful servants, ready to be delivered, and actually deliver them when duly called for by parties authorized and entitled to receive them; and for the performance of these duties, after the goods are delivered from the cars, the company are liable as warehousemen or keepers of goods for hire.

In short, the railroad corporation ceases to be a common carrier and becomes a warehouseman, as matter of law, when it has completed the duty of transportation and assumed the position of warehouseman, as matter of fact and according to the usages and necessities of the business in which it is engaged.

The rule then established, after argument by eminent counsel and upon much consideration, and supported by great force of reasoning, has ever since been considered settled law in this Commonwealth. *Sessions* v. *Western Railroad*, 16 Gray, 132. *Rice* v. *Boston & Worcester Railroad*, 98 Mass. 312. *Miller* v. *Mansfield*, 112 Mass. 260. *Stowe* v. *New York, Boston & Providence Railroad*, 113 Mass. 521. And it has been recognized, in the ablest decisions which have taken a different view of the subject, as a rule of a definite and practical character and of easy application. *Moses* v. *Boston & Maine Railroad*, 32 N. H. 523, 543. *Graves* v. *Hartford & New York Steamboat Co.* 38 Conn. 143, 151.

Upon a careful examination of the numerous decisions in other states, fully collected in the elaborate arguments at the bar, some in accordance and some in conflict with the judgment of this court, we find nothing which adds to or controls the reasoning of Chief Justice Shaw, upon which, more than twenty years ago, the law of this Commonwealth was authoritatively declared.

This case does not require us to consider whether the rule should extend to a case in which the goods have not arrived at their final destination, but are held by one railroad corporation in a warehouse at the end of its own line, with the duty of forwarding them by another carrier to their ultimate destination — as to which the judgments of the Supreme Court of the United States in *Railroad Co.* v. *Manufacturing Co.* 16 Wall. 318, and of the Court of Appeals of New York in *McDonald* v. *Western Railroad*, 34 N. Y. 497, seem to be in conflict with the opinions expressed in *Denny* v. *New York Central Railroad*, 13 Gray 481, 487, and *Judson* v. *Western Railroad*, 4 Allen, 520, 523.

The other cases, cited for the plaintiffs, in the Supreme Court of the United States, the House of Lords, the Court of Appeals of New York, and this court, were cases of common carriers by sea, who have not the same means of warehousing goods at their destination, and are not therefore within the rule which governs railroad corporations.  *Judgment for the defendants.*