## LILY L. BURR, APPELLEE, v. ADAMS EXPRESS COMPANY, APPELLANT.

Argued November 4, 1903—Decided June 13, 1904.

1. In the absence of special contract or custom, the duty of a common carrier of goods is not completed upon the mere arrival of the goods at destination, but includes the duty of delivery to the consignee.
2. Where the contract of carriage contemplates delivery of the goods upon the carrier's premises at the terminus of the route, and no time for the arrival of the goods or for their delivery is stipulated for, the duty of making delivery to the consignee involves either the allowance to the consignee of a reasonable time within which to make inquiries respecting their arrival or else the duty on the part of the carrier of giving notice of arrival to the consignee; and also involves, in either case, the allowance to the consignee of a reasonable time and opportunity, after notice of arrival of the goods, within which to take them away.
3. The question what is reasonable time or opportunity, where the facts are in dispute or the inference to be drawn from undisputed facts is in doubt, is a question of fact and not of law.

4. The appeal from the District Court to the Supreme Court, under the act of April 3d, 1902 (*Pamph. L., p.* 565), is limited in its scope to questions of law only. This court will not reverse a judgment of the District Court that is based upon its conclusion upon a mixed question of law and fact, if the conclusion is legally inferable from the facts proven.

On appeal from the Camden District Court.

Before Justices FORT and PITNEY.

For the plaintiff, *John F. Harned.*

For the defendant, *S. Stanger Iszard.*

The opinion of the court was delivered by

PITNEY, J. This action was tried in the District Court without a jury, and resulted in a finding and judgment in favor of the plaintiff. From this judgment defendant appeals, pursuant to the act of April 3d, 1902. *Pamph. L., p.* 565. By the terms of that act the appeal is limited in its scope to questions of law only.

The action was brought to recover the value of certain articles received by the defendant from the plaintiff to be carried from Red Bank to Merchantville, in this state. In the agreed state of the case it is set forth that at the trial the following facts appeared and were undisputed, to wit: "That on February 13th, 1903, plaintiff delivered to defendant, at Red Bank, a leather grip containing, among other things, the articles whose value is sought to be recovered, and also a bundle, for carriage for hire to Merchantville, in the name of the plaintiff. The goods arrived in Merchantville at half-past five in the afternoon of the same day. About eight o'clock in the evening the plaintiff, who lived at Pensauken, called at defendant's office in Merchantville to inquire whether the goods had arrived, and was informed by defendant's agent that they had arrived. Plaintiff then paid the expressage on the goods for their carriage from Red Bank to Merchantville, and asked the agent to deliver them

to the local expressman on the following morning for carriage to her house, which the agent consented to do, the house of the plaintiff being outside of the delivery limits of the defendant company at Merchantville. The local expressman was an independent carrier. Some time during the night following, the defendant's office at Merchantville was broken into and robbed, and the plaintiff's grip, with its contents, taken therefrom. Said grip and a part of the contents were afterwards found by an officer of the law and delivered to the plaintiff, the grip being mutilated and of no real value.

"Upon the above state of facts the defendant requested the court to enter judgment in its favor and against the plaintiff on the ground that as a matter of law the defendant's liability as a common carrier had ceased at the time the goods were stolen, which request the court refused, holding that the defendant was still liable as a common carrier at the time of the robbery. Thereupon the court gave judgment in favor of the plaintiff."

The single question raised by the defendant's appeal is whether, from the facts recited, it necessarily results, as a conclusion of law, that the defendant's duty as carrier, with its consequent liability as insurer, had ended at the time the goods were stolen. If it had ended, and the defendant at the time was acting as warehouseman, and not as a common carrier, there was no liability, in the absence of negligence; and since the case showed no negligence, a finding and judgment in favor of defendant would be compelled.

In the excellent article entitled "Carriers of Goods," in 5 *Am. & Eng. Encycl. L.* (*2d ed.*) 263, it is said: "There is a decided conflict in the authorities as to when the carrier's liability as such ceases and its liability as warehouseman attaches. One class of cases, adopting what is known as the Massachusetts doctrine, hold that the carrier's liability as insurer ends with the completion of the transit, the unloading of the goods from the cars and their safe deposit upon the platform or in the warehouse of the company; the carrier is not bound to give notice to the consignee of the arrival of the goods, but is entitled to assume the liability of

warehouseman upon the completion of the transportation and a safe storage of the goods. Another class of cases, following what is known as the New Hampshire doctrine, hold that the carrier's liability as insurer continues after the arrival of the goods at their destination until the consignee has had a reasonable time in which to call for and remove the goods; the carrier is bound to notify the consignee of the arrival of the goods, and the reasonable time does not begin to run until such notice, where practicable, has been given. The doctrine of the English cases is substantially the same as the New Hampshire doctrine. The consignee of goods shipped by railway is entitled to a reasonable time after the goods have arrived at their destination within which to take them away, and during such time the goods are in the hands of the railway as carrier, and subject it to all the liabilities which attach to that character. But when such reasonable time has elapsed, the company becomes liable as warehouseman merely."

The text-writer cites numerous decisions from the reports of the different states, and also several English cases. He treats New Jersey as occupying a doubtful position in this judicial controversy, because of something supposedly equivocal in the decision of this court in *Morris and Essex Railroad Co.* ads. *Ayres, 5 Dutcher* 393. It is true that in the syllabus of that case it was said: "After the goods are safely stored and protected from the weather and from trespassers, and ready for delivery, they become warehousemen, liable only as bailees without hire, and only responsible for ordinary neglect." But a previous paragraph in the syllabus is to the effect that it is the duty of the carrier to store the goods until the owner or consignee has a reasonable time to remove them. And in the body of the opinion of Mr. Justice Haines, this language is used:

"The obligation of common carriers by railway is safely to transport the goods to the place of destination, to deposit them without delay and without additional charge in their warehouse *until the owner or consignee has a reasonable time to remove them.* * * * Having the merchandise in good

order and safely stored and protected from the weather and from trespassers, and ready for delivery, *allowing a reasonable time for the owner or consignee to remove them,* their duty as carriers ceases, and they are no longer liable as carriers. After that they become warehousemen, with the liability only of bailees without hire, and responsible only for ordinary neglect [citing authorities]. After so depositing them in their warehouse, they keep the goods for the exclusive benefit of the owner, whose duty it is to remove them in a reasonable time."

The Ayres case did not turn at all upon the question whether the carrier's liability as such continued during any particular length of time after the arrival of the goods at destination. The question at issue was the reasonableness of a regulation of the carrier, the effect of which was to require the consignee to give to the carrier a receipt for the whole of the goods before he removed any part of them. The case, therefore, is not a clear authority upon the present controversy. At the same time, the language of the opinion is inconsistent with the so-called "Massachusetts doctrine." No other decision from the courts of this state has been called to our attention.

The conflict of authority in this country is referred to in *Ang. Carr.* (*5th ed.*), § 303, *note (a),* where it is said: "The rule that there is no change in the nature of the liability of the carrier until the consignee has had reasonable opportunity to take the goods away, has been adopted in many states, and seems to us more correct" (citing many cases). See, also, 6 *Encycl. L. & Proc.* 454, 459.

The law in England seems well settled.

*Garside* v. *Trent Navigation,* 4 *T. R.* 581, is cited in support of the so-called Massachusetts doctrine in the leading cases in that state. *Thomas* v. *Boston and Providence. Railroad Co.,* 10 *Metc.* 472; *Norway Plains Co.* v. *Boston and Maine Railroad Co.,* 1 *Gray* 263. In the Garside case, the defendant had undertaken to carry the goods to Manchester and house them there in order that they might be forwarded to Stockport by another carrier. The goods were

destroyed in defendant's warehouse at Manchester before any carrier came from Stockport to whom they could be delivered. On motion to set aside a verdict for defendant, the Court of Kings Bench held that the keeping of the goods in the warehouse was for the convenience, not of the carrier, but of the owner of the goods, and thereupon refused to disturb the verdict. But the evidence showed a course of business that materially modified the general duty of the carrier, and it was upon this that the decision was based. The case was distinguished on this ground by Justice Buller, in *Hyde* v. *Trent Navigation*, 5 *T. R.* 389 (at *p.* 398). In the latter case the duty of the carrier to make delivery to the consignee, in the absence of usage or agreement to the contrary, was asserted.

That the duty of the carrier as such includes (in the absence of special usage) the duty of making delivery to the consignee, entitling the latter to notice of arrival of the goods and a reasonable time for their removal, was expressly adjudged by the Court of Exchequer Chamber and by the House of Lords, in *Bourne* v. *Gatliffe*, 3 *Man. & G.* 643, 687; 11 *Cl. & F.* 45 (8th *Eng. Reprint* 1019). And in *Chapman* v. *Great Western Railway Co.*, 5 *Q. B. Div.* 278, the goods were addressed to the plaintiff at a certain station on defendant's railway, and were marked "to be left till called for." It was held that defendant's liability as common carrier had ceased because plaintiff had suffered more than a reasonable time to elapse before calling for the goods. But the court (Chief Justice Cockburn) said that, notwithstanding the special direction, the liability as carrier continued for a reasonable time after arrival of the goods at destination.

In our opinion, it is clear that the duty of the common carrier is not completed upon the mere arrival of the goods at destination. Delivery to the consignee, or to some place of deposit expressed in the contract or implied from the usage of the business, is a part of the carrier's duty as such. *Ang. Carr.* (5th *ed.*), § 282.

Where the contract of carriage requires delivery at the stated address of the consignee, the liability of the carrier

continues, of course, until such delivery is made. Where, as in the present case, the contract contemplates their delivery upon the carrier's premises at the terminus of the route, and no time for the arrival of the goods or for their delivery is stipulated for, it seems to us plain that the duty of making delivery necessarily involves either the allowance to the consignee of a reasonable time within which to make inquiries respecting their arrival or else the duty on the part of the carrier of giving to the consignee notice of arrival (*Ang. Carr.*, § 315) ; and also involves, in either case, the allowance to the consignee of a reasonable time and opportunity, after notice of the arrival of the goods, within which to take them away. Whether the consignee has had reasonable time and opportunity for their removal depends upon all the circumstances, including the question whether notice was received during business hours, when facilities were at hand for their removal. *Ang. Carr.* (*5th ed.*), §§ 287, 288. In this, as in all cases where questions of reasonable time, opportunity or the like are at issue, the determination of what is reasonable, where the facts are in dispute, or the inference to be drawn from undisputed facts is in doubt, is a question of fact and not of law.

In the present case, no notice was given to the plaintiff of the arrival of the goods at destination until she called at eight o'clock in the evening. There is nothing to show that she had been previously informed of the time when arrival was to be expected. It cannot be held, as matter of law, that she unreasonably deferred calling for the information. Unless, therefore, it conclusively appears that she accepted delivery of the goods, or that she delayed beyond a reasonable time before removing them, it cannot be held, as matter of law, that the contract of carriage had been performed by the defendant. Mere payment of the charges for transportation does not amount to acceptance of delivery, the goods not having been removed. Whether she was bound to remove them at once, depends upon whether the goods, in bulk, weight and the like, were of such a character that it was incumbent upon her to carry them away upon her per-

son, or whether she had other means at hand for their removal. Upon these questions the case is silent, except that it is fairly to be inferred that the employment of a local carrier was in contemplation, and that there was no local expressman or other carrier by whom the plaintiff could have the goods removed at that hour of the night.

The finding of the trial court that at the time the goods were stolen the defendant was still liable as a common carrier is a finding upon a mixed question of law and fact, and involves, among other things, a finding that there was nothing to show that the goods were of such a character as to render it incumbent upon the plaintiff to carry them away upon her person; that the employment of a local carrier was reasonably necessary, and that between the time she was notified of their arrival and the time they were stolen a reasonable time had not elapsed to enable her to have them removed by a local carrier. We cannot say, as matter of law, that the finding was not a reasonable inference from the facts proven. Upon this appeal, limited as it is to questions of law only, this court will not reverse a judgment that is based upon a conclusion of the District Court upon a mixed question of law and fact, if the conclusion is legally inferable from the facts proven. *Rogers v. Kershaw, 35 Vroom* 213, and cases cited.

We find no legal error in the record, and the judgment must be affirmed, with costs.