STATE OF MAINE vs. HENRY C. PARSHLEY.

Sagadahoc.    Opinion November 14, 1911.

*Common Carriers. Express Companies. Termination of Liability. Commerce.*
*Search and Seizure. U. S. Statute, Wilson Act, August 8, 1890.*

An express company's liability as a carrier continues until delivery of the shipment to the consignee, personally or at his residence or place of business.

The defendant was advised by an express company that it held an interstate shipment of intoxicating liquors addressed to him and asked if it was for him and what he wanted done with it. The defendant replied that he did not know whether it was his or not, but paid the express charges on the liquors, signed a receipt therefor, and told the company to keep the liquors until he found out about the same. Seven hours later the liquors were seized upon search and seizure process while in the office of the express company. *Held:* That at the time of the seizure there had been no constructive delivery of the liquors to the defendant, and that they were still in interstate commerce, and hence were not subject to search and seizure on State process.

On report.    Nol. pros. as by agreement.

Search and seizure process and reported to the Law Court.

The report is as follows:

"This was a process for the seizure of intoxicating liquors, alleged to be stored for the purpose of illegal sale in the office of the American Express Company in the City of Bath. It was issued by the Bath Municipal Court, and is dated August 5, 1910.

"The following facts appear in evidence:

"A barrel containing intoxicating liquors was shipped from Boston, Massachusetts, to Bath, Maine, the barrel, according to the marks thereon being consigned to H. C. Parshley. The driver for the express company called at the respondent's shop about ten o'clock A. M., notified him of the arrival of this barrel, asked if it was for him, and what he wanted done with it; respondent said he did not know whether it was for him or not, but that he would pay the

express charges, which he did, and signed the express receipt book ; and told the driver to keep the liquors until he (Parshley) found out about it.

"The liquors remained in the store room of the express company until about five o'clock in the afternoon of the same day, when they were seized under this warrant. Between the time the notice was given by the driver and time of the seizure no notice had been received by the express company from Parshley or anyone representing him, as to the disposition of the liquors. But the driver testifies that if any direction had been given by Parshley, he understood that it would have been his duty to carry and deliver the barrel to the respondent, as directed.

"Upon the foregoing statement of facts the case is, by agreement of parties, reported to the Law Court for its determination. Only a single question is reserved. All others necessary for the State to prove are admitted by the respondent. If the court is of opinion that the barrel of liquors seized had been sufficiently delivered by the express company to the respondent so that it was no longer under the protection of the inter-state commerce provision of the United States Constitution and of the federal statutes relating to the same, judgment is to be rendered for the State as follows : 'Judgment of the Bath Municipal Court affirmed ;' otherwise a nol. pros. is to be entered."

*Arthur H. Stetson,* County Attorney, for the State.

*Frank L. Staples,* for defendant.

SITTING : WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, BIRD, HALEY, JJ.

SPEAR and CORNISH concurring in the result only.

BIRD, J. There being no claim of an actual delivery, the sole question for determination is whether the liquors were constructively delivered before seizure under process.

The act of Congress of August 8, 1890, 26 Stats. 313, known as the Wilson Act, provides that all intoxicating liquors "transported into any state or territory, or remaining therein for use,

consumption, sale or storage therein, shall upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." The meaning of the word "arrival" as employed in this act was authoritatively settled in *Heyman* v. *Southern Railway Company*, 203 U. S. 270. The conclusions reached in that case have been summarized by this court as follows:

1. The elementary and long settled doctrine is reiterated that, prior to the Wilson Act, in case of interstate shipments, "delivery and sale in the original packages was necessary to terminate interstate commerce, so far as the police regulations of the states were concerned."

2. That the Wilson Act manifested no attempt on the part of Congress to delegate to the states the right to forbid the transportation of merchandise from one state to another, "since it merely provided, in the case of intoxicating liquors, that such merchandise, when transported from one state to another, should lose its character as interstate commerce upon completion of delivery under the contract of interstate shipment, and before sale in the original package."

3. That the State statute must permit the delivery of the liquors to the party to whom they were consigned within the State, but that, after such delivery, the State has power to prevent the sale of the liquors, even in the original package.

4. That the question whether the liability of the carrier, as such, has ceased, under the State laws, and has become that of a warehouseman, is immaterial. *State* v. *Intoxicating Liquors*, 102 Maine, 385, 395.

In the case under consideration, as already seen, there is no pretense of an actual delivery but it is urged by the State that there was a constructive delivery and that such is sufficient to meet the requirement of the "Wilson Act." In *Heyman* v. *Southern Railway Co.*, ubi supra, there were no facts justifying the passing upon

the question of constructive delivery but the court in its opinion says "of course we are not called upon in this case, and do not decide, if goods of the character referred to in the Wilson Act, moving in interstate commerce, arrive at the point of destination and after notice and full opportunity to receive them are designedly left in the hands of the carrier for an unreasonable time, that such conduct on the part of the consignee might not justify, if affirmatively alleged and proven, the holding that goods so dealt with have come under the operation of the Wilson Act, because constructively delivered." Id. page 276.

This language of the Supreme Court of the United States has already been considered by this court in *State* v. *Intoxicating Liquors*, 102 Maine, 385, 396, in which it is held that the point, if tenable, is unimportant from lack of facts to render it applicable to the cases under consideration; and in *State* v. *Intoxicating Liquors*, 104 Maine, 463, and again in *State* v. *Intoxicating Liquors*, 106 Maine, 138.

In the case in 104 Maine, 463, it is said "In this paragraph the court seems to have undertaken to state but not to decide the three essential elements of constructive delivery to be notice to the consignee of the arrival of the goods ; a reasonable time on his part after notice to receive them, and a mutual design or arrangement with the carrier to hold them for the consignee." And referring to the words "designedly left in the hands of the carrier for an unreasonable time" the court says "This phrase was undoubtedly intended to allude to a passive or silent understanding between the shippers of liquors, the carriers and consignees with reference to those transactions which operate to enable an evasion of the law and assist consignees in obtaining a safe delivery of their contraband goods." . . . . "The rule is well established that a constructive delivery can be effected only by an agreement between the carrier or middleman and the buyer or person claiming under him whereby the former agrees to hold the goods for the latter for some purpose other than that of carriage and delivery at their original destination. In the absence of an agreement with the buyer to the contrary, the carrier will be presumed to hold the goods in his

original capacity. The carrier cannot constitute himself the buyer's agent for the custody of the goods, nor can the buyer make the carrier his agent for custody without the carrier's consent:" . . . "The relation of carrier to the shipper, the consignee and the goods is originally fixed by law, and by a contract between the parties which is, that the carrier shall safely carry the goods to their place of destination and there deliver them to the consignee. This contract once existing, can be changed only by operation of law or by an agreement between the parties. When the goods arrive at their journey's end it is the duty of the carrier to store them. This duty is imposed by law. When stored they are still in the possession and custody of the carrier and the only change in his relation to the goods is the extent of his liability. The goods are still in transit. The contract is still binding upon the carrier to deliver the goods to the consignee, and this obligation can be terminated only by actual or constructive delivery or by a new contract with the consignee in place of the contract of carriage."

In 106 Maine, 138, this court says "In *Heyman* v. *Southern Railway Company*, 203 U. S. 270, 276, the court was careful to say that it did not decide that the federal protection would not be lost where the consignee, after notice, designedly left the liquors in the hands of the carrier for an unreasonable time. The locality of the liquors is not made the test. All that the federal courts seem to require is that the liquors shall once have been turned over to and accepted by the consignee. This may occur without any removal of the liquors themselves from the freight sheds of the carrier." This case and that in the 104 Maine, 463, were contracts for the carriage of goods as freight and not by express. In the latter case, it was held there was no constructive delivery, in the former that there was, but in that case not only had all the goods been receipted for but part of them had been delivered from the freight shed of the carrier to the agent of the consignee.

Was there constructive delivery of the liquors in the case at bar? As has been noted the contract between the shipper and carrier provided for carriage by express. Such contract includes the delivery of the goods to the consignee personally or at his residence or place

of business and until such delivery the liability of the carrier continues; *State* v. *Intoxicating Liquors*, 101 Maine, 430; 102 Maine, 211; *A. T. & S. F. Ry. Co.* v. *I. C. Com.*, 188 Fed. 229, 237. The record in the case at bar does not show that the liquors were ever tendered to the plaintiff personally or at his place of business. Notice was given him at 10 o'clock of the forenoon of a certain day that the liquors had arrived, and inquiry made if they were for him and what he wanted done with them. He replied that he was uncertain if his or not and said that he would pay the express charges, and directed the driver of the carrier to keep the liquors until he ascertained. He paid the charges and signed the express receipt book.

We do not think that the facts present a case within the exception from the rule as to delivery suggested in *Heyman* v. *Southern Railway Company*, ubi supra. There is no evidence that the liquors were designedly left in the hands of the carrier. At most there is but a suspicion or surmise arising from the character of the goods but there is no evidence contradicting the statement of plaintiff that he was not informed as to their ownership and that he asked opportunity to learn. Neither do we think they were held by the carrier an unreasonable length of time. If, instead of liquors, the goods had been any other commodity would seven hours have been an unreasonable delay? And to hold that a delay reasonable as to other commodities is unreasonable with respect to intoxicating liquors would be to refuse to the latter before delivery the same protection which the commerce clause of the Constitution affords to other goods. See *Heyman* v. *Southern Railway Co.*, 203 U. S. 270, 276, 277; *Adams Express Co.* v. *Kentucky*, 206 U. S. 129, 135, 136. Until delivery commerce in intoxicating liquors is left by the Wilson Act as free and untrammelled, and subject to the same regulations, as other commodities but to hold unreasonable delay in case of the former to be different from that of the latter would be discrimination and would permit the police laws of the State to affect the regulation of commerce. *Adams Express Co.* v. *Kentucky*, 214 U. S. 218, 222; Ex parte Eaglesfield, 180 Fed. 558, 562. The regulation of commerce adopted by the Wilson Act is one common rule, whose

uniformity is not affected by variations in state laws in dealing with such property. *In re Rahrer*, 140 U. S. 545, 559, 561 ; *Heyman* v. *Southern Railway Co.*, 203 U. S. 270, 274. Yet if unreasonable delay is to be interpreted in view of the police laws of the States no uniform rule is established and delay reasonable in a license state will be unreasonable in a state where prohibition prevails.' ' The receipt is not conclusive but may be modified in its terms or wholly contradicted by evidence. Defendant, nevertheless, had a right under the contract of carriage to delivery either to him personally or where he should direct and we find no evidence of waiver of this right. Indeed, it does not appear that the liquors bore any address except the name of defendant and the words "Bath, Maine" and, until directed where to make it, the express company could make no delivery. Finally not only is a designed leaving in the hands of the carrier for unreasonable time not proven but is nowhere affirmatively alleged.

Applying the test of our own decisions, we do not find constructive delivery proven by the facts presented in the reported case. There is no satisfactory evidence of a change of the contract of carriage by agreement of the parties nor was such a change affected by operation of law; *State* v. *Intoxicating Liquors*, 104 Maine, 463, 468 ; nor is there evidence that either contemporaneously with or subsequent to the giving of the receipt there was delivery of a part of the goods, as in *State* v. *Intoxicating Liquors*, 106 Maine, 138, 140.

A nol. pros. may be entered.