# JOHN BARTON PAYNE, Agent,

## *vs.*

## WILLIAM G. ROE.

*Carriers—Notice of Arrival of Goods—Due Diligence—Sale by Carrier.*

The carrier's liability as such does not terminate, nor its less stringent liability as warehouseman commence, until notice of the arrival of the goods at their destination has been given to the consignee, in so far as this is practicable, and a reasonable time after such notice has elapsed for the removal of the goods.                                        pp. 287, 288

The rule requiring notice to be given to the consignee of the arrival of the goods does not apply if this cannot be done by the exercise of reasonable diligence, as when the carrier is unable to locate the consignee.                         p. 288

To justify a carrier in selling the goods received by it for transportation, it must appear that there was a necessity for the sale by reason of their perishable nature, or that, for some other cause, it was neither possible to proceed with their transportation or to store them, that the carrier acted in good faith and with sound discretion, and that it was impossible to obtain instructions from the owner without causing a delay which the circumstances would not permit, and whether the sale was justified under the circumstances is a question for the jury.

p. 289

In an action against a carrier for damages by reason of the alleged conversion of a shipment of fruit by sale thereof, after arrival at its destination, it was error to grant prayers which, while instructing the jury to find for plaintiff should they find the facts stated in them, failed to refer to the defendant's effort, as shown by its evidence, to locate plaintiff, so as to notify him of the arrival of the shipment, or to its evidence as to the condition of the shipment, necessitating its immediate sale.                                        pp. 289, 290

*Decided April 26th, 1923.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Action by William G. Roe against John Barton Payne, agent, by appointment of the President of the United States, of the Seaboard Air Line Railway Company. From a judgment for plaintiff in the sum of $271.25, with interest and costs, defendant appeals. Reversed.

The first and second prayers of the plaintiff were as follows:

*First Prayer.*—The plaintiff prays the court to instruct the jury that if they find the plaintiff shipped the carload of watermelons mentioned in the evidence from Cara, Florida, consigned to himself at West Jacksonville, Florida, on or about June 18th, 1919, and if they further find that on or about June 19th, 1919, the plaintiff surrendered the original bill of lading for said shipment to the defendant's agent at Ocala, Florida, and that by direction of the plaintiff the said shipment was by said agent diverted and reconsigned to the plaintiff at the City of Richmond, and if they further find that thereafter on or about the 20th day of June, 1919, plaintiff directed said agent at Ocala, to divert and reconsign said shipment to Spartanburg, South Carolina, and that neither said defendant nor his agents advised the plaintiff that the said diversion to Spartanburg had not been accomplished, and if they further find that said shipment was by said defendant transported to Richmond, Virginia, and that after its arrival at said City of Richmond, the defendant or his agents on June 25, 1919, notified the plaintiff that the said shipment was on hand at Richmond and requested that the plaintiff give disposition therefor, and if they further find that the plaintiff on June 25, 1919, replied to said telegram by telegraph directing the delivery of said shipment to Woodson-Craig Company, at Richmond, Virginia, and if they further find that the said defendant or its agent caused the said shipment to be sold and failed to make delivery thereof to Woodson-Craig Company, then their verdict should be for the plaintiff.

*Second Prayer.*—The plaintiff prays the court to instruct the jury that if they find from the evidence that the defendant on or about the 19th day of June, 1919, received from the plaintiff the carload of watermelons referred to in the testimony for transportation to the City of Richmond, and further find that the defendant transported the same to said City of Richmond, and further find that at said City of Richmond the defendant or his agents on or about June 25th, 1919, directed that the same be there sold, and that the said watermelons were on or about June 25th, 1919, delivered by the defendant or his agent at said City of Richmond to Burton & Briel, and by said Burton & Briel there sold under the direction of the defendant, or his agent, as testified to in this case, then the jury is instructed that such sale amounted to a wrongful conversion of said watermelons, and the plaintiff is entitled to recover in this action.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Watson E. Sherwood,* for the appellant.

*Emory L. Stinchcomb,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered by the appellee, William G. Roe, against the appellant, John Barton Payne, agent by appointment of the President of the United States of the Seabord Air Line Railway Co.

The appellee, a buyer and shipper of fruits, and a resident of Florida, on the 18th day of June, 1919, delivered to the Tampa & Jacksonville Railroad Co., at Cara, Florida, a station upon its road, a carload of watermelons, consigned to him at Jacksonville, and took therefor a conductor's bill of lading.

At Ocala, Florida, a station upon the Seaboard Air Line Railroad, the appellee diverted the carload of melons from Jacksonville to Richmond, Va., and in doing so he surren-

dered to Harris, the station agent at Ocala, the bill of lading
he had received from the conductor at Cara, and in lieu
thereof, took from Harris a bill of lading by which it is shown
that the melons were to be transported to Richmond, Va., and
there delivered to him, as consignee.

The diversion of the melons from Jacksonville to Rich-
mond was made, as stated by Roe, on the morning of the
19th of June, 1919, while the record of the defendant com-
pany, as stated by Preston, its diverting agent at Jackson-
ville, in a letter to Roe, discloses that the diversion was made
on the 20th of June, though the bill of lading is dated the
23rd day of June, 1919.

On the afternoon of the day of the diversion, the appellee
asked the agent at Ocala to again divert the melons from
Richmond to Spartanburg, South Carolina, but Roe was told
by the agent that he "would not promise to get it done, but
would make the effort."

The agent at Ocala wired the diverting agent at Jackson-
ville, in an effort to make the diversion, but it was not accom-
plished, and the car went forward to Richmond, as billed.

The application for the diversion last mentioned was made
orally and the Richmond bill of lading was not surrendered
by the applicant. But, as stated by Roe, he told the agent at
Ocala that from there he was going to Thomasville, Georgia,
and would be in Thomasville during the week ending the 25th
of June, 1919.

The exact date of the arrival of the melons at Richmond is
not shown by the record, but on June 23rd, Goulder, the Rich-
mond agent of the defendant company, wired William C.
Moore, its freight claim agent at Norfolk, Va., telling him
the melons were at Richmond, "unclaimed, consignee un-
known, shipper W. G. Roe, Gainsville, Fla., advise disposi-
tion quick."

On the next day, the 24th day of June, Moore answered
Goulder's telegram, saying that he had wired Roe at Gains-
ville, a connecting point of the two roads over which the
melons had been transported, but his message was not deliv-

ered, as the party to whom it was addressed was unknown,
and asked for better address, but at the same time directed
him "to protect carriers interest."

Preston, the diverting agent of the defendant company at
Jacksonville, whose attention had been called to the fact that
the melons consigned to Roe were at Richmond, unclaimed
and undelivered, learned that Roe was at Thomasville, Ga.,
and he on June 25th, wired Roe that the diversion to Spar-
tanburg had not been accomplished and that the melons con-
signed to him at Richmond had reached their destination,
and asked that he advise disposition of them.

Upon the receipt of this telegram, Roe on the same day,
June 25th, wired Preston to deliver melons to Woodson-Craig
& Co., commission merchants of Richmond, and at the same
time wired Woodson-Craig & Co. to handle the melons to the
best advantage, and "if any chance for claim, file same."
Upon the receipt of the telegram from Roe, Preston on the
same day, June 25th, wired Goulder, the Richmond agent, to
deliver the melons to Woodson-Craig & Co.

It appears, however, from the record, that Goulder, after-
receiving Moore's telegram already mentioned, of June 24th,
in which he was told to protect carrier's interest, did, between
the hours of 11 A. M. and 12 M. of the following day, June
25th, turn the melons over to Burton & Briel, commission
merchants, to be sold by them "for account of whom con-
cerned." Therefore Goulder, upon the receipt of Preston's
telegram of June 25th, sent so late as 7.17 P. M. of that day,
wired Preston saying that he had, before the receipt of his
message, delivered the melons to Burton & Briel, to be sold
by them, and thereupon Preston, on June 26th, wired Roe
that the melons had been delivered to commission merchants
at Richmond to be sold on his account.

The melons were sold by Burton & Briel for a sum much
less than that shown to have been paid for them by the
appellee. But the defendant company claimed, and evidence
in support of such claim was offered by it, that the melons
being of a perishable quality had, by decay, depreciated in

value and that it was necessary, in order to prevent a total loss and to protect the plaintiff, to sell the melons without further delay.

The declaration contains two counts. In the first it is alleged that the defendant railway company "did not transport said carload of watermelons to the said City of Richmond and there deliver same unto the plaintiff safely and in good condition"; and in the second, that the said "railway company converted to its own use, and wrongfully deprived the plaintiff of the use and possession of the plaintiff's" said carload of watermelons.

The trial resulted in a verdict and judgment for the plaintiff and it is from that judgment this appeal is taken.

The only exception found in the record is to the rulings of the court upon the prayers.

The recovery sought in this case is not for any loss or damage sustained by the plaintiff because of the failure of the defendant company to accomplish the diversion of the melons from Richmond to Spartanburg, S. C., but as claimed by the plaintiff in the first count of the declaration, for the failure of the defendant company to transport and deliver the melons in good condition to the plaintiff at the City of Richmond, the point of destination; and, as claimed in the second count, for the wrongful conversion of the melons after their arrival in that city. There is, therefore, no question before us relating to the failure of the defendant company to divert the melons from Richmond to Spartanburg.

By the weight of authority, including the decisions of this Court, *B. & O. Railroad* v. *Green,* 24 Md. 92; *Fruit Co.* v. *Transportation Co.,* 104 Md. 574, it became the duty of the defendant company to notify the plaintiff, who was the consignor, consignee and owner of the melons, of their arrival in Richmond, if by reasonable diligence on its part he could have been located, before it could be held relieved of its liability as a carrier. 4 *R. C. L.* page 775, sec. 221; 10 *C. J.* page 236.

In 10 *C. J.* page 236 (*supra*) it is said, the decided weight of authority is in opposition to what is known as the Massachusetts rule, which in substance is, that when goods have reached their destination and are placed in a position of reasonable safety, ready for delivery to the consignee, the carrier's duty as carrier terminates, and that of warehouseman begins *without regard to notice to the consignee.* It then proceeds to say that in some jurisdictions, under statutes so providing, and in others, in the absence of such statutes, the general rule is well settled that the carrier's liability as such does not terminate, nor its less stringent liability as warehouseman commence, until notice has been given to the consignee of the arrival of the goods and a reasonable time after such notice for removal of the goods has elapsed. This is on the ground that it is unreasonable to insist that the consignee shall be in constant attendance on the carrier's office to ascertain if the goods have arrived.

In 4 *Ruling Case Law*, 775, sec. 221 (*supra*), in speaking of the rule requiring notice to the consignee, it is said, sound public policy seems to require this rule in order that the shipper may, if he chooses, prevent his goods from remaining stored in the warehouse subject to the warehouseman's liability only as such; and unless the carrier can announce the exact time when the goods will reach their destination, this would be impossible. The rule has appealed to many courts and most text writers as inherently just to both parties, burdensome to neither, and as tending to promptness on the part of carriers in giving the notices, which, whether compulsory or not, are generally expected from them. So advantageous has it been deemed to be in some jurisdictions, that it has been embodied in their law by statutory enactments.

The late CHIEF JUDGE McSHERRY in *Fruit Co.* v. *Transportation Co.* (*supra*), in speaking of this rule, refers to it as the New Hampshire doctrine, in contradistinction to the Massachusetts rule, and said that by it "the carrier's liability as insurer continues after the arrival of the goods at their destination and until the consignee has had a reasonable time

in which to call for and remove them and that the *carrier is bound to notify the consignee* of the arrival of the goods, and that the reasonable time does not begin to run until such notice, *where practicable,* has been given"; and in that case, this Court adopted what was there termed the New Hampshire doctrine as the more reasonable one.

But this rule requiring notice to be given by the carrier to the consignee of the arrival of the goods at the point of destination is not to be construed as requiring the carrier to do something that it cannot do by the exercise of reasonable diligence. For illustration, if the carrier in this case, by reasonable diligence, was unable to locate the plaintiff and was thereby prevented from giving him the required notice, it should not be held that its liability as carrier continued until such notice was given.

As stated in 2 *Hutchinson on Carriers,* section 790, in order to justify the act of the carrier in making a sale of the goods it must be shown "that there was a necessity for the sale, arising from the perishable nature of the property, which made its preservation for the owner impracticable, or that, from that or some other cause, it was neither possible to proceed with its transportation, nor to store it; that the carrier has acted in good faith and with sound discretion and that it was impossible to communicate with the owner and to receive instructions from him as to the course to be pursued, without occasioning a delay which the circumstances and conditions of the property would not admit. And whether, under all the circumstances, these conditions existed to justify the sale, is, when the action is one at law, a question of fact to be determined by the jury under proper instructions by the court." *Missouri K. & T. Ry. Co.* v. *Cox & Co.,* Tex. Civ. App., 144 S. W. 1196; *Ala. G. S. R. Co.* v. *McKenzie,* 139 Ga. 410, 45 L. R. A. (N. S.) 18.

The first and second prayers of the plaintiff, which we ask the Reporter to insert in his report of this case, are, we think, defective and should have been refused. In each of them the

jury was instructed to find a verdict for the plaintiff should they find the facts stated in them, although the facts produced in evidence by the defendant company in support of its defense are omitted therefrom. Neither of them contain any mention of the facts, offered in evidence by the defendant, of the attempt and the extent of the attempt made by it to locate the plaintiff in order that it might notify him of the arrival of the melons in Richmond, nor is there any allusion made in them to the facts given in evidence by the defendant in relation to the decayed condition of the melons and the necessity of a sale of them to protect the shipper from a total loss. All of which were questions of fact to be determined by the jury.

The only other prayer offered by the plaintiff was one upon damages. To this no objection was urged either in the oral or printed argument, and we discover no serious objection thereto.

The defendant offered nine prayers, of these, the fourth was granted. The 1st, 2nd, 3rd, 5th, 6th and 7th, were rejected, while the 8th and 9th were granted as modified. The defendant excepted to the rulings of the Court in granting the plaintiff's prayers and in rejecting its prayers above mentioned, and in modifying the 8th prayer, and in granting it as modified.

Without referring to, or commenting upon, each of the defendant's prayers, we will state that we have carefully examined each and all of them and discover no harmful error committed by the court in its action upon any of them.

Because of the errors mentioned, the judgment below will be reversed.

*Judgment reversed and new trial awarded, with costs to the appellant.*