ARMITT BROWN

*vs.*

RAILWAY EXPRESS AGENCY, INCORPORATED.

Hancock.    Opinion, November 23, 1936.

478

*H. L. Graham,* for plaintiff.
*Hale & Hamlin,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

DUNN, C. J.  The parties agree upon the facts.

Consignee (who was also consignor,) sues the terminal carrier for nondelivery of two trunks, a suitcase, and ten boxes, containing wearing apparel, other effects, and property, of the declared and fair value of $1,000.00. Transit over, the articles had been placed, in good order, absent specific delivery address, in the carrier's office, where, five days later, they were completely destroyed by a great fire. This fire, of undetermined origin, consumed many business places, as well as much of the residential district, in the city of the location of the express office. The cause of the fire is in nowise attributable to defendant. Any sufficiency of the place of deposit is not at issue.

Events may be summarized as follows:

On April 29, 1933, plaintiff took the containers to the Southeastern Express Company, at Summerville, South Carolina, in which place, through the preceding winter, he had been a vacationist, and left them for carriage, charges to be collected at destination.

Each package was marked and addressed: "Armitt Brown, Ellsworth, Me."

The carrier accepted the shipment. Prepayment of carrying rates was not necessary; if the charges should not be paid, the carrier would have a lien therefor, upon the things in its possession and under its control. *Ames* v. *Palmer*, 42 Me., 197.

Plaintiff was to summer in Maine, fourteen miles from Ellsworth, at Somesville, in the town of Mount Desert, where, as he already knew, there is no express office, and deliveries of express are not made.

That plaintiff intended going to Somesville, does not appear to have been brought to attention of the initial carrier. The shipper said he was journeying by automobile to Ellsworth, to arrive about two weeks later than the consignment.

The receipt given him refers to terms and conditions in official tariffs and classifications, which plaintiff, though he could have, did not read.

The receipt, as the case is submitted, neither increases nor modifies the general duty of the carrier.

The agent, on being told that plaintiff would call at destination for his goods, did not say that carrier liability would attend until the consignee should come; nor did he say that it would not. Nothing shows any mention of the subject.

The packages reached Ellsworth by train, on May 2, 1933, either in the morning or late afternoon.

A postal card notice, bearing postmark May 3, 1933, to consignee, mailed in a street letter box, to the address on the trunks and other receptacles, stating that they were being held at his risk, was returned to sender by the postal authorities, after the fire. The card had been stamped: "Addressee unknown."

The fire broke out May 7, 1933, at ten o'clock, P.M.

A fortnight or so from April 29, 1933, (the shipping day,) plaintiff appeared in Ellsworth.

In the course of a week, he gave notice of loss, by letter, from Mount Desert. The claim was rejected on its merits.

The underlying question is whether, at the time of the fire, defendant's responsibility as a common carrier of goods, with consequent liability as an insurer, had ceased, and become, less rigorously, that of a warehouseman, or bailee, the yardstick for the measurement of whose duty, for the protection of the property, is reasonable diligence only. *Hutchinson* v. *United States Express Co.*, 63 W. Va., 128, 59 S. E., 949.

It has been stated in a syllabus, in Maine, that where there is no special contract, an express company's liability as a carrier obtains until delivery of the shipment to the consignee, personally or at his residence or place of business. See Headnote, *State* v. *Parshley*, 108 Me., 410, 81 A., 484.

A headnote to a reported decision, it is the general rule, is not

law except so far as it is warranted by the judgment of the court upon the facts of the case. 7 R. C. L., 1017.

The headnote to *State* v. *Parshley*, supra, is broader than the opinion, delivered by Mr. Justice Bird, justifies. Controversy there was whether certain intoxicating liquors, moving in interstate commerce, as regulated by congressional legislation, (26 U. S. Stat., 313, known as the Wilson Act,) had, in a constructive sense, been delivered, so as to be beyond Federal protection, and subject to local laws.

That case and the present one are quite distinguishable.

"Ordinarily," says Bigelow, C. J., in *Conway Bank* v. *American Express Company*, 8 Allen, 512, "the duty of common carriers is to deliver articles at the place of destination to those persons for whom they are intended, and their responsibility as carriers does not cease until such delivery has been accomplished. But the contract of carriage may, in this respect, be essentially modified by express agreement; or by a usage or course of trade, by a particular mode of dealing between parties, by the well known and established practice of the carrier, and any other circumstances from which an intention of the parties can be clearly gathered to change the usual incidents of the contract, so as to put an end to the responsibility of the carrier as soon as the articles are transported by him to a particular terminus, and to substitute in its place the less stringent obligation of a depository or custodian of property intrusted to him for safe keeping."

In *Chapman* v. *Great Western Railway Co.*, 5 Q. B. Div., 278, quoted in *Burr* v. *Adams Express Co.*, 71 N. J. L., 263, 58 A., 609, shipment was addressed to the plaintiff at a railway station, "To be left till called for." The court said that, notwithstanding the special direction, carrier liability continued for a reasonable time after arrival of the goods. It was decided that when plaintiff came for them, he having suffered more than a reasonable time to elapse, defendant's liability as a carrier was already ended.

In the case at bar, carrier function was not completed by putting the effects in the office at the terminus of the route.

Attempt to give notice of readiness to deliver was fruitless.

The consignee did not reside in Ellsworth; he had no agent there.

No rule requires the carrier to do what by the exercise of due effort it cannot do. *Laporte* v. *Wells, etc., Co.*, 48 N. Y. S., 292; *Payne* v. *Roe*, 143 Md., 282, 122 A., 322; *Hutchinson* v. *United States, etc., Co.*, supra; *St. Louis, etc., Co.* v. *Townes*, 93 Ark., 430, 124 S. W., 1036.

Despite inability to give notice, common-carrier obligation did not terminate until reasonable opportunity had been afforded for the consignee to call, examine, and take his things from the premises of the carrier. Angell on Carriers, (5th ed.,) Sec. 303; *Burr* v. *Adams Express Co.*, supra.

What is a reasonable time is sometimes a question of law, sometimes of fact, not infrequently of mixed law and fact.

No two cases are alike; attendant circumstances vary.

What is reasonable depends upon a variety of considerations. The term is an elastic one of uncertain value in a definition. *Sussex Land, etc., Co.* v. *Midwest Refining Co.*, 294 F., 597.

The courts, aside from those jurisdictions which have adopted what is known as the Massachusetts doctrine, (*Thomas* v. *Boston, etc., Corp.*, 10 Met., 472; *Norway Plains Co.* v. *Boston, etc., Railroad*, 1 Gray, 263,) viz: that where the transit is ended, and the shipment is in the warehouse, liability as carrier is over, have refused definitely to fix by hours or days the limit of a reasonable time.

And it seems, to quote from a note to *United Fruit Co.* v. *New York, etc., Line*, as reported in 8 L. R. A., (N. S.) 240, that the state of affairs in the particular case, not the mere convenience of the consignee, will control in determining this reasonable time.

In the following cases, the time stated was held to have been more than reasonable, upon or regardless of other facts appearing; wherefore the carrier's liability, as such, had ceased:

From Saturday afternoon to Monday evening, for a box containing watches and other jewelry. *Laporte* v. *Wells, etc., Co.*, supra.

One full day and part of another, where consignee was absent and had no agent to whom delivery could be made or notice given. *Northrup* v. *Syracuse, etc., Co.*, 3 Abb. Dec., 386, 5 Abb. Prac., (N. S.) 425.

Three days, without notice, where consignee had recently moved from another city to a place four miles from the depot, and was neither known to nor found by the carrier's agent. *Pelton* v. *Rensselaer, etc., Co.,* 54 N. Y., 214.

Four days, where notice was mailed to consignee, but, being out of the city, he did not get it until two days after the fire had destroyed the goods. *Denver, etc., Co.* v. *Peterson,* 30 Colo., 77, 69 P., 578.

Five days, where the consignee did not live in the vicinity, had no agent there, and his residence was unknown to the carrier. *Derosia* v. *Winona, etc., Co.,* 18 Minn., 133.

Six days, *Welch* v. *Concord Railroad,* 68 N. H., 206.

Conclusion in the case in hand is that, when the goods were burned, defendant was no longer liable as carrier. Liability had been transmuted to that of warehouseman.

Warehousemen are not held to indemnify against loss from accidental fire. *Norway, etc., Co.* v. *Boston, etc., Co.,* supra; *Aldrich* v. *Boston, etc., Co.,* 100 Mass., 31; *Rice* v. *Hart,* 118 Mass., 201; *McCarty* v. *New York, etc., Co.,* 30 Pa. St., 247; *United Fruit Co.* v. *New York, etc., Co.,* (supra), 104 Md., 567, 65 A., 415.

The standard of care for warehousemen is such as an ordinarily prudent person would take of his own property, under the same or in a similar situation.

Since a lack of care is not shown, a finding in favor of defendant is compelled.

The case is remanded for the entry of:

*Judgment for defendant.*